## CLOSE v. ANN ARBOR RAILROAD CO.

1. EVIDENCE—MAP OR PLAT—INACCURACIES.

   It was not error, in an action against a railroad corporation for damage done by setting fire to an elevator, to admit in evidence a plat of the buildings and adjoining tracks containing a line from a position in which plaintiff claimed defendant's locomotive emitted a spark to the point where the fire broke out, indicating the distance on the ground without allowing for elevation and angles, where the court admitted the plat in evidence, excluding but not erasing the line objected to.

2. SAME—EXPERT AND OPINION EVIDENCE.

   An experienced wool buyer who had had no experience in estimating the value of wool damaged by fire, but who saw the condition of the damaged wool and knew the kind, value and quantity of it, was a competent witness as to the depreciation caused by the water and fire.

3. SAME—VALUE.

A contractor who had been a carpenter for 22 years, and had six or seven years' experience as a contractor and builder, during which he had made contracts for painting, and who had made improvements on the elevator, who gave testimony as to the cost of painting the building destroyed by fire, was rightly permitted to give his opinion of the cost of such painting.

4. SAME — MEMORANDUM — REFRESHING RECOLLECTION OF WITNESS.

A memorandum of property destroyed or damaged, used by a witness to refresh his recollection which was based on personal knowledge of the facts, was properly used.

5. SAME.

And an inventory, admitted as an original document, which one witness proved and testified was correct, was correctly received in evidence as an exhibit.

6. SAME—VALUE—EXPERT AND OPINION EVIDENCE.

Where several witnesses were asked their opinion as to the value of plaintiff's property, and included in their estimate the element of success of the business, location and similar elements, but the cash value was finally given and the court in charging the jury limited the jury in determining just compensation to the correct rule, the error was not reversible, the damages not being excessive

7. PLEADING—BILL OF PARTICULARS—SUFFICIENCY.

The objection that plaintiff's bill of particulars did not sufficiently identify certain friction clutch pulleys was not meritorious where no demand for a more specific bill was made and defendant was not shown to have been prejudiced: nor was an objection tenable that certain portions of a heating plant described by the testimony, were mentioned as a heating plant in the bill.

8. TRIAL—REBUTTAL—RAILROADS.

On rebuttal, after defendant had closed its case, the court did not abuse its discretion by receiving evidence that the locomotive in question had set another fire and that it would not have done so if it had been properly equipped and operated as defendant claimed.

9. SAME—ARGUMENT—APPEAL AND ERROR.

Objectionable argument must be brought to the attention of the trial judge and be ruled upon in order to be subject to review on error.

Error to Shiawassee; Miner, J. Submitted January 8, 1912. (Docket No. 3.) Decided March 29, 1912.

Case by William F. Close, the Ætna Insurance Company, and others, against the Ann Arbor Railroad Company for negligent setting of fire to plaintiffs' property by defendant's locomotive, under 2 Comp. Laws, § 6295. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Gustavus Ohlinger* and *Seth Q. Pulver* (*Alex. L. Smith*, of counsel), for appellant.

*Frank A. Dean* (*A. E. Richards*, of counsel), for appellees.

OSTRANDER, J. Plaintiffs recovered a verdict and judgment against defendant for $23,562.70 for damages occasioned by the burning of an elevator and certain outbuildings and their contents, May 25, 1909, at Byron, Shiawassee county, Mich. A motion for a new trial was made and was denied. In this court various alleged errors committed upon the trial, and in refusing a new trial, are relied upon and discussed, and will be considered generally in the order in which they are presented in the brief for appellant.

1. A map or plat of the premises was produced by plaintiffs, and, over objection, was received in evidence and exhibited to the jury. It was a ground plat, and, as showing the size and location of the buildings and their relative positions, its accuracy does not appear to be questioned. Upon it was a red line. Upon the line were the figures 60 feet. It was drawn by the person who made the plat, as his testimony shows, from a point in the foundation of the building first set on fire to a point in the defendant's track where the locomotive from which fire was supposed to have escaped stood. The figures marked upon the line was the estimated distance from the top of the locomotive stack, 12 feet above the ground, to the point in the roof of the building, 34 feet above the ground,

where the fire was discovered. It is said the plat was misleading because the jury might infer therefrom that the figures related to the distance between the two points indicated thereby upon the ground, and therefore that the distance traveled by the spark was considerably more than 60 feet. The witness fully described the meaning of the red line, the estimate of the distance he had made, and how he made it, and the court, upon the request of counsel for defendant, struck out the line, admitted the map without the line—we assume without causing the line to be erased. It is altogether improbable that the jury misapprehended the real facts.

2. Various witnesses were called by plaintiffs and gave testimony as to the situation, quality, quantity, and values of property destroyed and injured as the result of the fire. Some of the property was injured, but not destroyed, and estimates and opinions concerning the amount of the damage were received. There was a quantity of wool in one of the destroyed buildings and some of it was thrown out of the building and saved. Some fleeces were scorched by fire, some were torn, some soaked with water, and some had gathered dirt and refuse, depreciating the market value of the wool. A witness testified that he had been in the wool business for 17 years, and began work for plaintiff Close in March, 1909, after which time he had been employed in buying, in the wool season, and in packing wool for him. He was at the elevator when the fire was discovered. He professed to know, and had means of knowing, approximately, the number of pounds of wool in the elevator at the time, and the quality and value of it; knew what it had cost. He saw and described the condition of the wool after the fire, and put that which had been thrown out into sacks. He gave an estimate concerning the depreciation in market value. It is said in argument that he had no experience in discounting wool for fire damage, and, consequently, was wholly lacking in the experience necessary to enable him to express an opinion, and that he had no such knowledge of the wool in

question as was required to form an opinion if he had had the experience. It seems to be unnecessary to say that an experienced wool buyer, who had never inspected wool damaged by fire might, nevertheless, after inspecting wool so damaged, have and give a valuable and reliable opinion concerning the amount of the damage to the fiber and the market value of the fleeces burned, wet, and torn, and made unclean. We think the court was not in error in refusing to strike out his opinion evidence.

A witness who had been a carpenter for 22 years, had 6 or 7 years' experience as a contractor and builder, had made all, or nearly all, of the improvements which plaintiff Close had put upon the elevator in question, had taken contracts for the erection of buildings in which the cost of painting was included in the bid made, testified to the cost of the elevator, giving as an estimate of the cost of painting $121. It was moved that the estimate as to painting be stricken out as incompetent, and it is argued in this court that he had shown no knowledge sufficient to admit the testimony. It is said that his experience as a contracting painter was shown by him to be limited to the decoration of a tool chest. The statement is refuted by the record and is to some extent indicative of the character of the exceptions relied upon and the argument made to support them. We have felt called upon, in view of the argument, to read at length the testimony of the witnesses whose competency to express opinions is called in question. The applicable rules of law are not in dispute, and are not in doubt. We find no reason for saying that the testimony criticised should have been excluded.

As to the use made of memorandums: Here, again, there is no dispute and no question concerning the applicable rules of law. It would have been better if counsel for plaintiffs had, with more precision, shown, in the first instance, that the witnesses using memoranda were, by the aid thereof, testifying according to a present recollection. As we read the record with the aid of the briefs, after giving especial attention to those portions of the

record recited in the brief for appellant, we think it appears in every instance that witnesses who used memorandums for any purpose had, and meant to affirm that they had, personal knowledge of the facts recorded and testified to; that they made, or caused to be made, the memorandums used at the trial, and while they could not from present recollection, without the aid of the memoranda, state all facts and particulars in detail, with the memorandums recollection was so refreshed that they were able to testify from recollection to the matters detailed.    The inventory known as Exhibit G, used by one of the witnesses, the use of which is complained about, was an original document made by the witness.    His testimony concerning it is, in substance, that he set down in it what he found at the time it was made, and knew at that time that it was correct.    We do not find that any rule of law was violated in permitting the use of memorandums by witnesses.

3.  A witness was sworn who testified that he lived at Morrice, Mich., and had since March, 1895; that he was engaged in the business of buying and selling grain, beans, seeds, wool, etc., and the general elevator business, and had been engaged in such business more than 25 years; that he was the owner of an elevator at Morrice, which he built.    He described his elevator and, in some respects, the machinery in it; testified that he had been in the Close elevator a dozen times and at different times had been through the building; that he was there in May, 1909; that in his judgment the machinery and furnishings of the elevator were then in excellent condition, and he was then asked this question:

"Mr. Towner, what, in your judgment, was the fair value of the Close elevator, building, machinery, and its equipages, for the purpose for which it was used, there at Byron on the 25th of May, 1909?"

At the suggestion of the court the question was amended by using the words "fair cash value."    The

witness answered, "$10,000." The witness was then taken over the different machines in the building and put a price upon them. On cross-examination he made the following statement:

"In making an estimate upon this building, I figured upon what the first cost would be as my experience has given it to me in building elevators at Morrice, Perry, and Ionia. At Ionia I merely put in the machinery. I don't know how long this elevator had been built. At the time I made the statement, I did not know this was on leased property. In making my statement, also, I certainly took into consideration the business prospects."

After some further cross-examination, motion was made to strike out his testimony regarding the value of the elevator and its contents, and the motion was denied. A witness for the plaintiffs was asked this question:

Mr. Judson, what, in your judgment, was the value of the elevator building, its machinery, and equipage, fixtures, for the purposes for which it was being used, on the 25th of May, 1909?"

The objection was:

"I object to the question for two reasons: *First*, there has been no proper foundation laid with this witness for answering such a question; *second*, the question does not call for a fair market value at Byron the day in question.
"*The Court*: You better change that to market value.
"*Q*. I will add market value to the question.
"*The Court*: With that he may answer."

The objection was repeated, and one made to the form of the question.

"*The Court*: He may answer.
"*A*. I would place the value from $9,000 to $11,000."

On cross-examination he was asked the question:

"When you fixed the valuation upon this property, you had in mind the advantageous location of the elevator, didn't you?
"*A*. Yes; that would be one thing.
"*Q*. Also the fact that Mr. Close had a good business

at the time, would enter into your consideration somewhat, wouldn't it?

"*A.* Yes, sir."

There was considerable discussion concerning the proper measure of damages. Counsel for defendant finally stated his position as follows:

"My idea is merely this: The value of the property, in view of counsel's statements on the other side, is the worth of the property not enhanced by anything by reason of the business which he has or location. He said he would not care to go into the question of profits, but he wants to go into the question of the things that make up those profits. My position under their declaration in this case, the only thing that they can recover for is the fair cash value of this property itself, not enhanced by anything but what it is worth at Byron.

"*Mr. Dean:* For the purpose for which it is used?

"*Mr. Pulver:* There is no question about that, probably, so far as that is concerned. Here is an elevator, machinery, it cannot be used for anything else; here is an elevator building, it cannot be used for anything else; but what is the fair cash value of the machinery or that building, not taking into consideration the location of the country or the amount of business that has been built up there, but what is the value of the building?"

Following this, the witness Judson, who had already expressed his opinion upon this subject, was asked:

"What, in your judgment, was the fair value of this Close elevator, its machinery, and equipages on the 25th of May, 1909, for the purposes for which it was used at the village of Byron?"

It was objected to that the question did not contain the necessary elements to determine the true amount of damages. To this another objection was added that the testimony should have been brought out on the first direct examination of the witness, and could not be brought out after the cross-examination was finished. An answer having been permitted, counsel for plaintiffs added to his question: "Take the machinery as it was; the building as it was." And the witness replied, "$10,000."

What has been said is sufficient to show the question raised. Counsel for defendant say that the measure of damages in such a case "is just compensation and money for the property destroyed; such an amount as will fully restore the loser to the same property status that he occupied before the destruction."

Upon this subject the court instructed the jury as follows:

"If plaintiffs are entitled to recover, they are entitled to recover just compensation for the property destroyed, or such an amount as will restore him or them to the same property status as he occupied before his property burned or they occupied before the property was burned."

And again:

"If you find in favor of the plaintiff in this case, then give him such damages, such just compensation for the property destroyed, or such an amount as will restore him or them in this case to the same property status—to the same property status he occupied before his property was burned—so he will be placed in the same position; not a cent more, not a cent less. Plaintiff should not make a cent out of this transaction, and they should not lose a cent so far as the value of this property is concerned. You cannot give them anything for speculation, anything for profit, anything for losses in his business, but what this property is fairly and reasonably worth at the time it was destroyed."

A witness for the defendant expressed the opinion that the elevator, machinery, and equipment was worth $5,000, for which sum it could be replaced. Another witness said that in his judgment the valuation was around $5,000. On cross-examination this witness said:

"I don't know as I could say there is a market value for an elevator. Its value depends on the place where it is located a great deal. In making my estimate upon the machinery, I am not making an estimate of what that machinery would be worth if William F. Close was compelled to tear it out of his elevator there and put it on the market and sell it. My estimate is on the basis that I have been able to buy such machinery of like condition for. That would depend upon my good luck in finding bargains. I might

not be able to go and buy a safe of this kind for $75 or $50 whenever I wanted to; I have always been able to buy them about that discount.    I do not know anything about the cost of material at Byron.    I do not know the cost of labor at Byron."

A third witness for defendant said that the fair cash value of the elevator building and its equipment at the time of the fire was about $5,000.    A witness for plaintiffs testified on cross-examination that the elevator might have been built at the time for $2,500 or $3,000.    It may be said that plaintiffs had testimony tending to show the cost of construction of the elevator and the cost of millwright's services, exclusive of machinery, was more than $5,000; that the lowest estimate placed on the value of the elevator and machinery by defendant's witnesses was $5,000. Plaintiffs claimed, and offered testimony tending to prove, that the loss upon buildings other than the elevator was $793.86, and that the loss upon other property, excluding buildings and the elevator and its machinery, was $19,179.79.    It thus appears that in the opinion of witnesses the value of the elevator and machinery and fixtures was not less than $5,000 and not more than $11,000. It further appears that the jury had the aid derived from careful cross-examination of the witnesses upon the subject of their means of knowledge, experience, and the factors used by them in arriving at their estimates.

An elevator building in a village like Byron has no market value.    The value of good will, or the success of a business, ought not to be used to swell or depreciate the compensation to be paid when the building in which the business is conducted is destroyed by fire; no malice or active wrong-doing being charged to the one responsible for the fire.    In an action of trespass for tearing down and removing a building, the correct rule for measuring the damages was said to be "the value of the barn as it stood on the premises at the time it was removed." *Kent County Agricultural Society* v. *Ide,* 128 Mich.

423 (87 N. W. 369). So in *Johnston* v. *Insurance Co.,*
106 Mich. 96 (64 N. W. 5), the fact to be ascertained by
the jury was said to be "reasonable worth of articles at
the time and place of their destruction." The real value
of the buildings at the time of the fire is the rule ap-
proved in Massachusetts. *Wall* v. *Platt,* 169 Mass. 398
(48 N. E. 270). Where property destroyed had no mar-
ket value, the real or ordinary value, based upon all facts
connected with such property, such as its cost, its uses to
which it has been put, its age, its condition, location, and
the like, should be determined. 3 Elliott on Railroads, §
1239. The question asked the witness Towner appears to
us unobjectionable.

The charge of the court properly limited recovery. The
jury was well informed as to the situation, use, age, condi-
tion, etc., of the buildings and equipment. The verdict
does not seem to be an excessive one. We conclude that
while some of the questions—some of them at the sugges-
tion of counsel for defendant—appear to state elements of
value not proper to be considered, no reversible error was
committed.

4. A witness for plaintiffs gave testimony with respect
to the machinery in the elevator, and in doing so testified
about certain friction clutch pulleys, to which counsel for
defendant objected for the reason that the pulleys were
not described in the declaration nor in the bill of particu-
lars so as to be identified, and so as to apprise the defend-
ant of the character, size, and description of them. The
bill of particulars describes three friction clutch pulleys.
Objection was also made to the testimony on the part of
the plaintiffs with respect to certain portions of the heat-
ing plant described in the bill of particulars as a heating
plant. No demand for a more specific bill was made.
We are unable to perceive how, in any event, defendant
was prejudiced. The exceptions are without merit.
*Buckeye Township* v. *Clark,* 90 Mich. 432, 434 (51 N.
W. 528); *Tanner* v. *Page,* 106 Mich. 155, 158 (63 N. W.
993); *Strutz* v. *Brown,* 110 Mich. 687 (68 N. W. 981).

5. Plaintiffs were permitted to introduce on rebuttal— that is to say, after the defendant had closed its case— certain testimony with respect to another fire set by a locomotive engine of the defendant, and certain testimony as to the distance an engine properly equipped and operated would throw sparks. It is said that this was not proper rebutting testimony and was prejudicial to defendant. Undoubtedly, the tendency of this testimony was to prove negligence on the part of the defendant. It appears, however, that the defendant had offered testimony tending to prove that its locomotive was in good repair and properly operated. It was in reply to such testimony, and to rebut it, that the testimony in question was introduced, properly, we think. In any event, it was not an abuse of the sound discretion lodged with the trial court to permit the testimony to be given.

6. Alleged improper remarks of plaintiffs' counsel in argument to the jury. All that the record discloses upon this subject is that counsel for the defendant excepted to certain statements made by the attorneys for the plaintiffs in their closing arguments to the jury, followed by two pages of matter which we assume contains the argument objected to. There is nothing to show that the court's attention was called to the argument which was being made, that the court was asked to interfere or interrupt the same, or to make any ruling with respect thereto. *Bates* v. *Kitchel*, 166 Mich. 695 (132 N. W. 459), and cases cited in opinion.

No prejudicial error having been made out, the judgment is affirmed.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, BLAIR, and STONE, JJ., concurred. BIRD, J., did not sit.