CHICAGO & E. R. CO. v. OHIO CITY LUMBER CO. et al.

(Circuit Court of Appeals, Sixth Circuit. June 12, 1914.)

No. 2473.

1. RAILROADS (§ 484*)—FIRES—ENGINES—EQUIPMENT—NEGLIGENCE—QUESTION FOR JURY.

Where, in an action for fire alleged to have been set out by one of defendant's engines, there was evidence that the engine while passing the property threw out live sparks and embers much larger than any which could pass through a proper spark arrester of the kind described by defendant's witnesses who testified that the engine was properly equipped with a spark arresting apparatus in perfect condition and of the most approved and effectual kind, whether the engine was so equipped in fact was for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1740–1746; Dec. Dig. § 484.*]

2. EVIDENCE (§ 474*)—EXPERT WITNESSES—QUALIFICATIONS—MARKET VALUE.

Where a witness had been connected with the lumber business in various capacities for nearly 20 years and for 4½ years had been a director, secretary and treasurer, and manager of plaintiff lumber company, during which time he had sole charge of the business, making all purchases and sales, keeping the books, checking and inspecting goods received, and making daily records and weekly reports of goods sold, and knew the value of the lumber company's stock and buildings destroyed, he was competent to testify as to their value.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2196–2219; Dec. Dig. § 474.*]

3. EVIDENCE (§ 474*)—PROPERTY DESTROYED—NONEXPERTS.

Where more accurate evidence is not available or obtainable, any person, whether owner, active manager, or employé, who is familiar with the property destroyed and for which action is brought, though not an expert, may testify as to the value thereof.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2196–2219; Dec. Dig. § 474.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. EVIDENCE (§ 500*) — PROPERTY DESTROYED — VALUE — SINGLE OR GROSS AMOUNTS.

A nonexpert testifying as to the value of destroyed property may give his estimate in single or gross amounts.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2290, 2291; Dec. Dig. § 500.*]

5. DAMAGES (§ 111*)—DESTRUCTION OF REAL PROPERTY—BUILDINGS—MARKET VALUE.

Where buildings destroyed by fire alleged to have been set out by a railroad company were located in a small village and had little if any market value, and the use to which they were put in connection with the other property destroyed materially affected their value, the measure of damages was not limited to their fair market value, but was properly extended to their fair and reasonable value immediately before the fire considering their age, depreciation, cost of reconstruction, and their use with the other property destroyed by the same fire.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 274-278; Dec. Dig. § 111.*]

6. WITNESSES (§ 255*)—REFRESHING MEMORY—INVENTORY.

Where the stock and buildings of a lumber company were destroyed by fire alleged to have been set out by a railroad engine July 15, 1908, and on January 1st of that year a witness had made a complete and detailed inventory of the lumber company's property in the ordinary course of business, having carefully and accurately counted the lumber and other articles of merchandise therein set forth and included therein a complete list of every item on hand at the time it was made with the cost price of each, which the witness stated was its true value, and he further testified as to purchases and sales made subsequent to the taking of the inventory and that the amount of stock on hand varied but little between the taking of the inventory and the time of the fire, the witness was properly permitted to use it to refresh his memory, and it was properly admitted in evidence.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 874-890; Dec. Dig. § 255.*]

7. APPEAL AND ERROR (§ 882*)—RULINGS ON EVIDENCE—RIGHT TO COMPLAIN ON APPEAL.

Where the court was about to strike out certain documents and cross-examination, but at defendant's suggestion they were retained and the jury at defendant's request was instructed not to consider the documents on the question of prices or values of the property sued for, defendant could not complain on appeal of their admission.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591-3610; Dec. Dig. § 882.*]

8. TRIAL (§ 307*)—PLEADINGS—SUBMISSION TO JURY.

Whether pleadings shall go to the jury in any case is within the sound discretion of the trial court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 732-737; Dec. Dig. § 307.*]

9. RAILROADS (§ 454*)—FIRES—SPARK ARRESTERS—STATUTES.

Rev. St. Ohio 1908, 3365-1, requiring railroad companies operating railroads within the state to equip their engines with "some device or contrivance that will most effectually guard against the emission of fire and sparks which would otherwise be thrown out by such engines," imposes a higher degree of care in the prevention of the escape of fire than that required by common law.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1668-1671; Dec. Dig. § 454.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

10. RAILROADS (§ 485*)—FIRES—SPARK ARRESTERS—STATUTES—INSTRUCTIONS.
Rev. St. Ohio 1908, § 3365–1, requires railroad companies to equip loco·
motives with "some device or contrivance that will most effectually guard
against the emission of fire and sparks which would otherwise be thrown
out by such engines." In an action for a fire alleged to have been set out
by sparks, the court instructed that it was the duty of the defendant to
"equip its engines with the most effective apparatus," to "use the most
effectual method known to the business at the time," to adopt "the most
effective method known to the railroad business at the time," to provide
the engines "with the most effectual apparatus in use," to construct the
engine "with the most effectual appliances," and to equip each engine
"with the most efficient spark arrester then known," to guard against
the escape of fire or sparks. *Held*, that the language used in each in-
stance was strictly synonymous with the provisions of the statute and
was therefore not objectionable as imposing on the railroad company a
higher duty than that required by the statute.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1747–1756;
Dec. Dig. § 485.*]

In Error to the District Court of the United States for the Western
Division of the Northern District of Ohio; John M. Killits, Judge.

Action by the Ohio City Lumber Company and others against the
Chicago & Erie Railroad Company. Judgment for plaintiffs, and de-
fendant brings error. Affirmed.

J. B. Foraker, of Cincinnati, Ohio, for plaintiff in error.

J. W. Mooney, of Columbus, Ohio and H. L. Conn, of Van Wert,
Ohio, for defendant in error.

Before WARRINGTON and DENISON, Circuit Judges, and SES-
SIONS, District Judge.

SESSIONS, District Judge. This action was brought by the Ohio
City Lumber Company and certain insurance companies (plaintiffs) to
recover damages for the destruction of the plant of the lumber com-
pany by a fire alleged to have been started upon its premises by sparks
from a passing engine of the railroad company (defendant). At the
time of the fire each of the plaintiff insurance companies carried in-
surance on some of the property which was destroyed. After the fire
and before the commencement of this action the insurance companies
adjusted the loss with the lumber company and paid the amounts thus
found to be owing under their respective policies. Issues relating to
the origin of the fire, the negligence of the defendant, and the value of
the property destroyed were raised by the pleadings, presented by the
proofs, and submitted to and determined by the jury. There were ver-
dict and judgment for the plaintiff, and the defendant brings this writ
of error, assigning error upon the refusal of the trial court to direct
a verdict in its favor, the admission of evidence, and the charge to the
jury.

[1] Counsel for defendant insist that it was entitled to a verdict
by direction. This insistence is based upon the claim that the undis-
puted evidence in the case shows that the engines concerning which
complaint is made were properly constructed and equipped and prop-
erly operated. It is true that several of defendant's employés, includ-
ing inspectors, mechanics, enginemen, and trainmen, testified in posi-

tive terms and apparently from knowledge that each of the engines, which could have set the fire, was equipped with spark-arresting apparatus in perfect condition and of the most approved and effectual kind. The enginemen and trainmen also testified that each of the engines, while passing the lumber company's plant, was carefully and skillfully handled and operated. On the other hand, several of plaintiffs' witnesses, including workmen in the lumber yard and others in that immediate vicinity at the time, testified that at least one of these engines, while passing the lumber plant, threw out live sparks and embers much larger than any which could pass through a spark arrester of the kind described by defendant's witnesses and required by the Ohio statute unless the arrester was defective or the engine improperly operated. The question thus presented was one of fact and for the jury to determine. L. & N. R. R. Co. v. Bell, 206 Fed. 395, 124 C. C. A. 277.

[2] The property destroyed by the fire consisted of a dwelling house, a stable, nine sheds, a stock of lumber, glass, builder's hardware, and hay tools. The errors assigned upon the admission of evidence all relate to the testimony and proofs concerning the value of the burned property. Plaintiffs' principal witness as to values was Joseph B. Kuntz, who, for about 4½ years before the fire, had been the manager of the lumber company's business at Ohio City. In response to specific questions and over objection, Mr. Kuntz was permitted to state what, in his opinion, was the "fair and reasonable" value of each of the burned buildings just prior to the fire. Over like objection, he was permitted to place lump sum values upon the lumber, glass, builders' hardware, and the tools. Defendants contend that this testimony was incompetent and therefore inadmissible: First, because the witness was not shown to be qualified to testify as to values; second, because the values were stated in gross sums and not in detail; and, third, because the true measure of the value of the buildings was their "fair market" value and not their "fair and reasonable" value. These contentions are without merit. This record shows that Mr. Kuntz had been connected with the lumber business in various capacities for about 20 years. For 4½ years he had been a director, secretary and treasurer, and manager of the Ohio City Lumber Company. During that time he had had sole charge of the business of that company, making all purchases and sales, keeping the books, checking and inspecting all goods received, and making daily records and weekly reports of all goods sold. In so doing he must have become thoroughly familiar with the quantities, qualities, prices, and values of the goods in which he was dealing. He lived in the dwelling house and used the other buildings which were burned. He knew their age, location, use, and condition. He was acquainted with the value of building material. He had frequently sold such materials to builders and contractors and was familiar with their estimates of the cost of construction. With such experience and such knowledge, he was well qualified to testify on the subject of values.

[3, 4] Where more accurate evidence is not available or obtainable, any person, whether owner, active manager, or employé, who is fa-

miliar with the property and goods connected with and used in a business, although not an expert, may testify as to the value of such property when destroyed by fire, and his estimates of value may be given in single or gross amounts. Union Pacific R. Co. v. Lucas, 136 Fed. 374, 377, 69 C. C. A. 218; Walker v. Collins, 50 Fed. 737, 740, 1 C. C. A. 642; Jensen v. Palatine Ins. Co., 81 Neb. 523, 116 N. W. 286; Thomason v. Capital Ins. Co., 92 Iowa, 72, 61 N. W. 843; Bolte & Jansen v. Equitable Fire Ins. Ass'n, 23 S. D. 240, 121 N. W. 773; Farley v. Spring Garden Ins. Co., 148 Wis. 622, 134 N. W. 1054, 1056; 17 Cyc. 113, 115.

[5] No hard and fast rule, applicable to all cases, can be laid down as to the measure of the loss suffered by the destruction of buildings by fire. In some instances it may be their value detached from the land and separated from the use made of them. In others, where an active market is shown to exist, the market value may be the fair measure of loss. In still others, the cost of reconstruction, after deducting depreciation from age and other causes, may fairly recompense the owner. Usually, however, the real or ordinary value of a building, based upon and determined from its cost, age, condition, location, and the uses to which it has been put, furnishes a fair measure of the loss occasioned by its destruction. In this case it appears that these buildings were located in a small village and had little, if any, market value. The use made of them in connection with the other property destroyed materially affected their value. Under such circumstances, it cannot be said that their market value, detached from the land and separated from the use to which they had been put, fairly represented the loss suffered by plaintiffs in their destruction. No error was committed in permitting the witness to testify as to the fair and reasonable value of these buildings, taking into consideration their age, depreciation, the cost of reconstruction, and their use in connection with the other property destroyed by the same fire. Close v. Ann Arbor R. Co., 169 Mich. 392, 135 N. W. 346; Matthews v. Mo. Pac. Ry. Co., 142 Mo. 645, 44 S. W. 802; McMahon v. City of Dubuque, 107 Iowa, 62, 77 N. W. 517, 70 Am. St. Rep. 143; Chicago & N. W. Ry. Co. v. Kendall, 186 Fed. 139, 141, 108 C. C. A. 251.

[6] This fire occurred July 15, 1908. About January 1st of that year, the witness Joseph B. Kuntz made a complete and detailed inventory of the lumber company's property. This inventory was offered and received in evidence and Mr. Kuntz was permitted to refresh his recollection therefrom while testifying. The witness testified that he personally made the inventory in the due course of business, that he carefully and accurately counted the lumber and other articles of merchandise therein set forth, and that it showed "a complete list of every item on hand at the time it was made" with the cost price of each item which he said was the true value thereof. He further testified as to the purchases and sales made subsequent to the taking of the inventory, and also that the amount of stock on hand varied but little between the taking of the inventory and the time of the fire. No error was committed in receiving the inventory or in permitting the witness to use it and the jury to consider it. Wells Whip Co. v.

Tanners' Mut. Fire Ins. Co., 209 Pa. 488, 58 Atl. 894; Levine v. Lancashire Ins. Co., 66 Minn. 138, 68 N. W. 855; Coleman v. Retail Lumbermen's Ins. Ass'n, 77 Minn. 31, 79 N. W. 588; German Ins. Co. v. Amsbaugh, 8 Kan. App. 197, 55 Pac. 481; West Branch Lumberman's Exchange v. American Central Ins. Co., 183 Pa. 366, 38 Atl. 1081; Insurance Co. v. Weide, 9 Wall. 677, 19 L. Ed. 810; Insurance Companies v. Weide, 14 Wall. 375, 20 L. Ed. 894.

[7] After the fire Joseph B. Kuntz and his brother, John Kuntz, who was also a witness, prepared proofs of loss which were delivered to the insurance companies. These proofs of loss purported to be statements in detail of the lumber, glass, hardware, and other property which was burned. In the preparation of these statements, the two men worked about ten days and had before them and used the January inventory, all of the sales slips or records between January 1st and July 15th, and the original invoices of all goods purchased between those dates. The quantity of goods destroyed was determined by adding the subsequent purchases to and subtracting the subsequent sales from the inventory. After the fire loss was adjusted with the insurance companies, the sales slips and invoices of purchases were believed to be of no further use and were destroyed. The values contained in the proofs of loss were as a whole considerably higher than those contained in the inventory and were quite thoroughly discredited. Complaint is made because these statements or proofs of loss were admitted in evidence and permitted to go to the jury. Whether or not these statements were competent evidence need not be determined. The record shows that, after they had been introduced and after the witnesses had been cross-examined concerning them, both the documents and the cross-examination with relation to the items contained therein were about to be stricken out by the court, when, at the suggestion of the defendant, they were retained. Also, at the request of the defendant, the jury was instructed not to consider them on the question of prices or values. Defendant is not now in a position to complain of this action.

The defendant offered no evidence as to the value of any of the property destroyed. If its counsel believed that the estimates of value given by plaintiffs' witnesses were incorrect and too high, it would not have been difficult for them to show the true and correct value of staple articles of merchandise like lumber, glass, and hardware. Having made no effort to disprove or contradict plaintiffs' proofs in that regard, it is fair to assume that they had small confidence in their ability so to do.

[8] Complaint is also made concerning the action of the court in permitting plaintiffs' amended petition to go to the jury. Whether the pleadings shall go to the jury in any case is within the sound discretion of the trial judge. In this instance that discretion was not abused. Moreover, during the charge to the jury, there was a colloquy between the court and counsel upon this particular subject and counsel for defendant not only did not object to the pleadings being submitted to the jury but requested certain instructions concerning them which were given.

[9, 10] A statute of Ohio (3365–1) requires every railroad company operating a railroad within the state of Ohio to equip its locomotive engines with "some device or contrivance that will most effectually guard against the emission of fire and sparks which would otherwise be thrown out by such engines." By this statute a much higher degree of care in the prevention of the escape of fire from locomotive engines than that required by the common law is imposed upon all railroad companies operating within the state. Instead of following the exact language of the statute, the trial judge, in his charge upon the question of negligence, instructed the jury that it was the duty of the company to "equip its engines with the most effective apparatus," to "use the most effectual method known to the business at the time," to adopt "the most effective method known to the railroad business at the time," to provide the engines "with the most effectual apparatus in use," to construct the engine "with the most effectual appliances," and to equip each engine "with the most efficient spark arrester then known," to guard against the escape of fire or sparks. The terms and language used are strictly synonymous with those contained in the statute and correctly state the statutory rule. Defendant's criticism thereof is unwarranted. Besides, its request upon this subject was given in substance.

The judgment will be affirmed, with costs.