### ENTERPRISE MFG. CO. v. SHAKES-PEARE CO.

### No. 2708.

District Court, W. D. Michigan, S. D.

Nov. 3, 1942.

Albert L. Ely, of Akron, Ohio, and Smith, Searl & Strawhecker, of Grand Rapids, Mich., for Enterprise Mfg. Co.

Chappell & Earl, of Kalamazoo, Mich., for Shakespeare Co.

RAYMOND, District Judge.

■ Each party has filed numerous exceptions to the master's report made pursuant to reference for an accounting of profits and damages awarded by interlocutory decree which found infringement of Case Patent No. 1,579,076. Reference to the opinion of the Circuit Court of Appeals of the Sixth Circuit in Enterprise Manufacturing Company v. Shakespeare Co., 106 F.2d 800, to the master's report, and to the opinion of this court filed July 21, 1937,[1] eliminates necessity for discussion of any other than the controlling issues presented by the exceptions. Large portions of the record made before the master, much of his report, and many of the exceptions are directed to issues which are here of little or no pertinency in view of the court's conclusion that the accounting should not be based upon apportionment of profits. There will, therefore, be no discussion of what constitute proper charges against profits. During the taking of the testimony upon the accounting, as well as in the oral argument before the master, both parties conceded that segregation of profits made on the infringing

---

[1] No opinion for publication.

862

reels during the infringing period from the profits on the entire business of defendant is impossible, and that such profits are so inextricably commingled that no intelligible theory of apportionment is apparent. See Horvath v. McCord Radiator & Mfg. Co., 6 Cir., 100 F.2d 326. Consideration of the entire record is convincing that the commingling of the infringing operations with the numerous other operations which were then being carried on by defendant, and the fact that in the same factory, during the same period, and with the same employees, thousands of non-infringing reels were made and put into production, precludes any intelligent separation of activities which will result in even an approximately correct distribution of executive, office and factory expenses, or a determination of profits from the infringing reels. The report of the master is clear that he arrived at the same conclusion.

■ The master, however, after stating the conclusion that a reasonable royalty was the proper basis of an award because of the impossibility of ascertaining profits derived by defendant from the sale of reels containing the infringing device, awarded to plaintiff the sum of $67,826.36, precisely one-fourth of the alleged profits on sales of infringing devices amounting to $271,305.47, the impossibility of ascertaining or apportioning which resulted in the necessity for adopting the reasonable royalty basis of award. This finding has no supportable basis in the record. Neither of the parties suggested a division of profits on any such basis, and both have now filed exceptions to the findings of the master thereon. The master was clearly correct in finding that defendant's business had been conducted in such a way that it was impossible to determine the profits from the infringement. There is no logical connection between defendant's assumed profits on the reels containing the infringing device, and a reasonable royalty. Agreements for royalties are seldom based upon profits and there is nothing in the record to justify a belief that the parties would, at the beginning of the infringement period, have contracted for a license upon such a basis. Plaintiff's exception 1, and defendant's exceptions I, II, IV, and XXII are, in substance, based upon this misapplication of the reasonable royalty doctrine, and these exceptions must therefore be sustained, excepting that portion of defendant's exception XXII reading "or

in any sum or amount" which portion of XXII is overruled. Plaintiff's exception 2 is overruled for reasons hereinafter stated.

■ Several of the exceptions filed by plaintiff relate to proper method of ascertainment of defendant's profits, and particularly with reference to the propriety of deductions from gross profits, such as deductions for yearly operations conducted at a loss, for manufacturing expense, cost of stolen reels, life insurance premiums, and bonus payments to officers. For reasons hereinbefore stated, these issues are no longer pertinent, and plaintiff's exceptions 4, 5, 6, 7, 8 and 9 are therefore sustained. For the same reasons, plaintiff's exception 10 is overruled.

■ Careful review of the record which was before the Court of Appeals is convincing that the master was correct in finding that the defendant was not a conscious, deliberate or wilful infringer. A fair deduction from the record is that, being charged with the infringement of six patents, defendant entertained a good faith belief of their invalidity, and it was upheld in this belief as to five of the six patents upon which suit was brought. The patent in suit was sustained upon a narrow margin of validity, and it was not unreasonable for defendant to believe that the claims of the patent in this accounting were also invalid. The claims sustained and here involved were construed to call for a structure which permits the removal of the level-wind mechanism, leaving a reel which can be used without the replacement of any part. The Court of Appeals said [106 F.2d 801]:

"Case accomplished his object by providing a hole in one of the plates of the reel large enough to permit the withdrawal of the screw-threaded shaft, thus leaving the remainder of the reel intact and immediately usable."

Where the validity of a patent is a fairly debatable question, defendant cannot properly be charged with wilful infringement. See General Motors Corporation v. Dailey, 6 Cir., 93 F.2d 938; Welling v. LaBau, C.C., 35 F. 302; Toledo Computing Scale Co. v. Moneyweight Scale Co., C.C., 178 F. 557; Columbia Wire Co. v. Kokomo Steel & Wire Co., 7 Cir., 194 F. 108. It follows that plaintiff's exception 3 must be overruled.

Plaintiff's exceptions 11, 12, and 13 challenge the master's holding that plaintiff's commercial "Supreme" reel was inoperative when used with the level-winding shaft and carriage removed, and the pertinency of any such finding to the issues submitted to the master. These exceptions must be sustained, not only because such a finding is immaterial to the issue involved, but also because inconsistent with the master's finding that "the Case patent shows (particularly in Fig. 11) a perfectly operable non-level wind reel when the threaded shaft is removed." The master is not in accord with the ruling of the Court of Appeals and of this court concerning the anticipatory effect of the Style C reel, but this ruling has now become the "law of the case" and is not now open to modification. Plaintiff's exceptions 11, 12 and 13 are therefore sustained.

Plaintiff's exception 14 challenges the finding that "It is clear that Case did not invent the combination of the elements set out in claims 8, 9, 10 and 11." The validity and infringement of these claims are not within the scope of the reference to the master and are foreclosed by the previous ruling of the court. Plaintiff's exception 14 is therefore sustained.

Plaintiff's exception 15 is overruled, for the reason that a determination of reasonable royalty necessarily involves consideration of the scope of the claims of the patent alleged to be infringed, and in cases where the patent relates only to a portion of the machine in which it is incorporated, the limitations upon scope imposed by other patents are essential elements for consideration.

Plaintiff's exceptions 16 and 17 relate to the failure of the master to take into consideration in his findings certain facts relative to profits of the entire business of the defendant, and failure to take into consideration reduction in price of the Supreme reel. These elements are, as already indicated, improper to be considered when damages are to be determined upon a reasonable royalty based on sales, and exceptions 16 and 17 are therefore overruled.

The court finds itself in accord with the master's conclusion that the cost of this reference should be equally divided, and plaintiff's exception 18 is overruled.

Defendant's exceptions III, V, X, XI, XII, XVII, XVIII, XIX, XX and XXI, in substance, embody its contentions that plaintiff has suffered no damage or property loss by reason of the infringement because no sales value was added by use of the infringing device, and that a finding of nominal damages only should be made, or that, in any event, one-half of one per cent. of the gross sales, or an approximation thereof, would be a reasonable royalty in this case. These contentions are erroneous for reasons stated later in this opinion, and the exceptions are therefore overruled.

Defendant's exceptions VI, VII, VIII, IX, XIII, XIV, XV and XXIV relate generally to issues which would be involved were an accounting to be made upon the basis of apportionment of profits. For the reason that the findings referred to in said exceptions relate to matters which have no pertinency to the reasonable royalty theory of ascertaining damages, these exceptions are overruled.

Defendant's exception XVI is overruled for the reason that a fair interpretation of the master's finding complained of is that it approves the reasonable royalty theory.

Defendant's exception XXIII is overruled for the reason that there is no evidence that the master failed in arriving at his conclusions, to take advertising matter into consideration.

The foregoing disposition of the exceptions filed by the respective parties discloses the basis upon which the accounting should be made. Both parties introduced evidence upon the issue of reasonable royalty and they are in accord that under the authorities the computation should be based upon the amount of gross sales of the reels which embodied the invention. The aggregate amount of such sales is $1,516,773.44. Plaintiff insists that fifteen per cent. of this amount, or $227,516.01, should be the minimum award, while defendant urges that one-half of one per cent., or approximately $7,500, is the extreme amount which should be awarded. The court is of the view that each of these amounts presents an extreme unjustified by the record.

Plaintiff urges that the level-wind takedown was a substantial and valuable improvement in fishing reels, while defendant insists that there is no substantial value in the feature of the contribution which this court and the Court of Appeals found that Case had made, namely, a level-wind reel in which the level-winding mechanism can

be removed and the reel used as a non-level-winding reel, without replacing any part.

■ The court is therefore called upon to evaluate the removable shaft feature of the patent. Both this court and the Court of Appeals have attributed substantial value to the removability of the level-wind shaft without disturbance of the frame, there being left, without replacement of any part, a going non-level-wind reel. Obviously, plaintiff cannot recover damages resulting from the previously asserted infringement of three other patents, the teachings of which are· also embodied in the reels alleged to infringe. The court must avoid an award based upon other elements of the infringing reels which are claimed in Case 1,637,437, Schmid 1,461,586, and Case 1,-688,135, all of which were sued upon in this case and held invalid. See Underwood Typewriter Co. v. E. C. Stearns & Co., 2 Cir., 227 F. 74; Clark v. Schieble Toy & Novelty Co., 6 Cr., 248 F. 276; Kintner v. Atlantic Communication Co., D.C., 294 F. 136. In the case of James L. Taylor Manufacturing Co. v. Steuernagel, 2 Cir., 19 F.2d 298, 300 it was said:

"On an accounting such as this it is most important to distinguish the profits derived from the infringing element, particularly where part at least of the infringing product is different and constructed under another patent. Underwood Typewriter Co. v. [E. C.] Stearns & Co., supra. In such case, recovery should be limited to the profits derived from the use of the infringing as distinguished from the non-infringing elements, if apportionment is possible. Because it may be difficult to find an applicable working principle to make the apportionment, neither changes the requirement so to do nor the legal necessity therefor."

No clear basis for separation of the respective values is found in the record. Such an obstacle, however, has not deterred the courts from awarding damages upon a reasonable royalty basis. The principles applicable to such situations have been stated in the following cases: Horvath v. McCord Radiator & Manufacturing Co., 6 Cir., 100 F.2d 326; Egry Register Co. v. Standard Register Co., 6 Cir., 23 F.2d 438; United States Frumentum Co. v. Lauhoff, 6 Cir., 216 F. 610.

■ In the Horvath case, page 335 of 100 F.2d, it was said: "This case is one for a reasonable royalty under Section 70 of Title 35, United States Code, 35 U.S.C.A. § 70. In fixing damages on a royalty basis against an infringer, the sum allowed should be reasonable and that which would be accepted by a prudent licensee who wished to obtain a license but was not so compelled and a prudent patentee, who wished to grant a license but was not so compelled. In other words, the sum allowed should be that amount which a person desiring to use a patented machine and sell its product at a reasonable profit would be willing to pay." . ı . . .

■ In the Egry Register case, page 443 of 23 F.2d, Judge Denison said:

"To adopt a reasonable royalty as the measure of damages is to adopt and interpret, as well as may be, the fiction that a license was to be granted at the time of beginning the infringement, and then to determine what the license price should have been. In effect, the court assumes the existence ab initio of, and declares the equitable terms of, a suppositious license, and does this nunc pro tunc; it creates and applies retrospectively a compulsory license. * * *

"In fixing a reasonable royalty, the primary inquiry, often complicated by secondary ones, is what the parties would have agreed upon, if both were reasonably trying to reach an agreement. This must be modified by the commercial situation, and when the result is to interfere with a patent monopoly, which the patentee was in position to and desired to keep, by retaining the entire market himself, his compensation for parting against his will with that opportunity must take due account of the loss to him of anticipated profits on the business which the licensees will thus get away from him. It is a step further, and we think a necessary one, to say that, when the patentee's business scheme involves a reasonable expectation of making future profits by the continuing sale to the purchaser of the patented machine, of supplies to be furnished by the patentee, which future business he will lose by licensing a competitor to make the machine, this expectant loss is an element to be considered in retroactively determining a reasonable royalty; and this is so even though the expectation of such future business was not the result of any system of contract obligations, but was only expectation reasonably based on established business methods and customs. This retroactive determination of the value, 10 years

ago, of a thing which then had no market value, is not easy; but it presents no greater difficulties than are met, fairly well, by courts and juries in other fields of litigation."

■ In United States Frumentum Co. v. Lauhoff, 6 Cir., 216 F. 610, 616, 617, 618, it was said:

"Returning, now, to the observation of all other kinds of property and rights excepting patent rights, there remains a class of cases or a group of instances where no market value existed and where no loss or impairment of sales can be definitely proved. The law is not, in such case, impotent. Plaintiff is not compelled to go away with nominal damages just because he cannot show that his property, or other like it, was commonly bought and sold on the market, or because he did not wish to sell, or because it was returning him no income. The real value—the actual value—of what has been taken is always the ultimate question. Proof of market value is one way to show this actual loss; proof of lost sales is another way. But, if neither of these methods can be followed, the law permits other available, pertinent proofs. Those familiar with real estate estimate and testify to the real value or fair value of land which is without market value (Chicago & E. Ry. v. Ohio [City Lumber] Co. [C.C.A.6] 214 F. 751, 131 C.C.A. 57); and these witnesses and the jury may take into account all the special circumstances of the situation as bearing on the ultimate question. The same thing is true as to personal property of such character that it has no market value. Instances of the application of this rule as to both real and personal property are too familiar for citation. In the same general class are all personal injury cases. Pain and suffering, the loss of earning power, the loss of support, are all things which have no market value and all present situations where the damages cannot be ascertained or computed according to any arithmetical formula; but the jury is put in possession of all the facts and circumstances, it has the benefit of such testimony from experts as may show the rules and methods in force in the particular field, and it estimates, as best it may, how much money will compensate plaintiff for the wrong done.

"Further pertinent familiar illustration is found in the settled rules concerning the estimation of values of property taken in the exercise of the right of eminent domain. It frequently happens that property is taken which is so situated and environed as not to possess any market value; and yet its value is universally solved by opinion evidence. * * *

"This damage or compensation is not, in precise terminology, a royalty at all, but it is frequently spoken of as a 'reasonable royalty'; and this phrase is a convenient means of naming this particular kind of damage. It may also be well called 'general damage'; that is to say, damage not resting on any of the applicable, exact methods of computation but upon facts and circumstances which permit the jury or the court to estimate in a general, but in a sufficiently accurate, way the injury to plaintiff caused by each infringing sale.

"Save for the effect of the decided cases, we should have no hesitation in affirming the right of the patentee to recover such 'general damage' or 'reasonable royalty' in a case where the clearer criteria did not exist, where the utility and advantages of the invention were established and where there was substantial basis for estimating the value of these advantages. To send the successful plaintiff away after years of litigation and with only nominal damages is repellant to the sense of justice. Such a result has been many times condemned; it is characterized by Judge Severens as 'an untoward ending of a good cause' (Brennan [& Co.] v. Dowagiac [Mfg. Co.], 162 F. 472, 473, 478, 89 C.C.A. 392, 398), and led him to say, speaking of the patentee's difficulty in preserving his rights:

" 'But this only enhances the obligation of the courts to find a way, if it be possible, to redress the wrongs done by those who have been willing to gather the fruit into their own basket.' "

It is to be noted that no licenses have been granted under this Case patent and therefore there is no "established royalty".

■ Defendant introduced much evidence tending to establish that in actual practice no use would be made of the alleged improvement, and urges that it therefore possesses no practical value. It may be acknowledged that fishermen would make infrequent use of the alleged improvement and that it has little practical value to the user. This, however, would not justify a conclusion that it lacks substantial sales value to the manufacturer or that defendant so regarded it at the time the infringe-

866

ment began. The following excerpts from defendant's advertising shortly after the infringement commenced clearly demonstrate the contrary,

"Practical fishermen have told us they wanted these improvements and consequently they should be of great interest to your customers."

"This feature makes it possible to quickly and easily clean the level-wind—the most abused part of a reel. The bushing cap at the end of the carriage screw is taken off with thumb and forefinger; the level-wind assembly is then lifted out, cleaned, and replaced, all in a few moments' time. The level-wind may even be removed entirely and the reel used as a 'straight' reel, if necessary. This feature is present on all Shakespeare level-winding reels from the Criterion model up. Think what this means to the man who is far out in the woods on a fishing trip—and don't neglect it as a sales-point when showing the new Shakespeare reels."

In all Shakespeare catalogs, the level-wind take-down is mentioned as one of the outstanding features of the reel. The correspondence which passed between plaintiff and defendant clearly indicated defendant's belief that the level-wind take-down feature was a valuable asset and that it would be very desirable if plaintiff and defendant could preserve a monopoly of this feature. In this correspondence, defendant suggested the adoption of "a constructive plan to enable both of us to fully capitalize the feature of readily removing the level winding mechanism from level winding reels".

The foregoing and much other evidence of a similar nature contained in the record indicate that shortly before and during the period of infringement, defendant attributed to the improvements of the Case patent in suit a practical and substantial value,—if not in utility to the customer, then to the manufacturer as a "sales-point" in producing sales and the profits incident thereto. In the case of Cugley v. Bundy Incubator Co., 93 F.2d 932, 934, in a similar situation, the Circuit Court of Appeals of the Sixth Circuit said:

" * * * Statements such as these made in appellant company's publications carry more force than its present denial that any advantage results from the Stover method."

And in the case of Seymour v. Ford Motor Co., 6 Cir., 44 F.2d 306, 308, it was said: " * * * The patent is itself evidence of such utility, and the use of the patented device by the defendant has long been recognized as an admission of this fact, and as creating an estoppel upon the defendant to deny such utility." See also, Sandy MacGregor Co. v. Vaco Grip Co., 6 Cir., 2 F.2d 655.

Recognition of the foregoing principles definitely precludes the court from acceptance of defendant's contention that the improvement disclosed in the patent now being considered was without value or was of only nominal value.

The fifteen per cent. award suggested by plaintiff finds slight support in the record, aside from the testimony of Charles T. Pflueger, vice president and superintendent of plaintiff. It apparently is based upon the assumption that defendant was a wilful infringer and that violent infringement was essential to save defendant from approaching bankruptcy. Neither of these contentions finds justification in the record.

The record contains testimony in regard to eight patent royalty agreements relating to fishing tackle, level-wind line guides for fishing reels, reel seats for fishing rods, etc. From these, it appears that the usual rate of royalty paid and received in the fishing tackle industry is four or five per cent. of the sale price when the license is for the manufacture and sale of a distinctly new, complete article of fishing tackle. Plaintiff's counsel has directed the court's attention to several cases in which the reasonable royalty rate has been established at from ten to twenty-three and a half per cent., as follows: Autographic Register Co. v. Sturgis Register Co., 6 Cir., 110 F.2d 883, 886, 10%; W. S. Godwin Co. v. International Steel Tie Co., 6 Cir., 29 F.2d 476, 478, 10%; Dunkley Co. v. Vrooman et al., 6 Cir., 272 F. 468, 469, 10%; K. W. Ignition Co. v. Temco Electric Motor Co., 6 Cir., 283 F. 873, 879, 23½%; Power Specialty Co. v. Connecticut Light & Power Co., 2 Cir., 80 F.2d 874, 878, 15%; Munger v. Perlman Rim Corporation, 2 Cir., 275 F. 21, 25, 10%; International Vitamin Corp. v. E. R. Squibb & Sons, D.C., 13 F.Supp. 129, 132, 10%.

After careful study of the evidence and the foregoing authorities, the court has attempted to determine, nunc pro tunc, the reasonable royalty which parties situated as were plaintiff and defendant at the commencement of the infringement period would have agreed upon if both parties were attempting to reach an agreement.

In giving due consideration to a supposititious contract for a license to use the improvement of the patent in question, it must be recognized that it is at best a narrow advance in the art, and probably without great practical value excepting for the purpose of advancing sales.

The conclusion of the court is that a rate of two and one-half per cent. on sales would have been such a reasonable royalty. This, based upon the admitted sales of reels containing the features of the patent in suit, amounts to $37,919.33. Interest from date of final decree at five per cent. will also be awarded. See Duplate Corp. v. Triplex Co., 298 U.S. 448, 459, 56 S.Ct. 792, 80 L.Ed. 1274; General Motors Corporation v. Dailey, 6 Cir., 93 F.2d 938, 942. Costs involved in the accounting reference will be divided equally between the parties.

A decree in conformity herewith may be submitted for signature on or before November 14, 1942.