## EGELHOFF v. OGDEN CITY.

No. 4622.  Decided May 10, 1928.  (267 P. 1011.)

*A. W. Agee, S. E. Blackham,* and *J. A. Howell,* all of Ogden, for appellant.

*Henderson & Johnson,* of Ogden, for respondent.

HANSEN, J.

The defendant prosecutes this appeal from a judgment rendered against it on account of damages caused by a landslide to plaintiff's premises, buildings, and furniture.

In April, 1925, the plaintiff was the owner of 17/100 of an acre of land located near the Hermitage Hotel in Ogden Canyon, Weber county, Utah. This land had three cottages located upon it. The cottages were provided with furniture for use as summer homes. During about the year 1891, Ogden City constructed a wooden stave pipe line through Ogden Canyon for the purpose of conveying water for the use of the city and its inhabitants. The pipe used was 2 feet in diameter. The pipe line was constructed along the mountain side about 90 feet to the south of and about 50 feet above plaintiff's premises. The slope of the surface of the mountain in going directly from plaintiff's premises to the pipe line is about 45 degrees from the horizontal. Plaintiff's premises are located in the bottom of the canyon near and on the opposite side of Ogden River from the pipe line. In constructing the pipe line a trench was excavated along the side of the mountain and the pipe line laid in the trench. On April 29, 1925, a large quantity of earth and rock slid down from the mountain onto plaintiff's premises. On April 30, 1925, a similar slide occurred. The slides placed a dam across the Ogden river, injured and wrecked plaintiff's cottages, destroyed her furniture, and substantially damaged her premises. The slide of April 29th began at and consisted of rock and earth from below the pipe line. The slide of April 30th was of rock and dirt from above the pipe line. The slide of April 29th apparently

did not injure the pipe line, but it was taken out for a considerable distance by the slide of April 30th.

Plaintiff bases her right to recover damages upon the alleged negligence of the defendant city in the following particulars: (1) That the pipe line where the slides occurred was so old and decayed that water continually leaked therefrom, and as a result of such leaking the ground on the mountain side was rendered so soft and slippery that the slides came down onto plaintiff's premises. (2) That when the pipe line was constructed the trench in which the pipe was laid was left in such condition that it collected the water from rain and snow which fell on the mountain side at and above the trench, and the water so collected in the trench rendered the ground on the mountain side so soft and slippery that it slid down onto plaintiff's premises. (3) That the defendant city failed to turn the water out of the pipe line immediately after the slide of April 29th.

The case was tried to a jury. The defendant requested the trial court to direct the jury to bring in a verdict in favor of the defendant, and against the plaintiff, no cause of action. The failure to so instruct is assigned as error.

It is here contended by appellant: (1) That in operating the pipe line Ogden City was acting in its governmental capacity and not in its proprietary capacity; (2) that the evidence is insufficient to support the verdict. Plaintiff alleges in her complaint, and the defendant admits in its answer, that—

"For many years last past defendant Ogden City has been the owner of, operating and maintaining, a water system consisting of a distributive water system and waterworks, reservoirs, and pipe lines running up and into and through Ogden Canyon for the purpose of supplying water for its municipal needs as well as for domestic, manufacturing, and culinary needs of its inhabitants, for which the defendant Ogden City receives rental payments, and that said water system is operated and maintained by defendant Ogden City as a commercial enterprise for profit."

The law relating to the liability of a municipal corporation for negligence in the construction and management of its waterworks system is thus stated in 6 McQuillin, Mun. Corps. § 2880, p. 5514:

"The furnishing of water to private citizens is a corporate rather than a governmental function, and hence it is liable to its customers for negligence in furnishing water the same as a proprietor of a private waterworks would be, except that where the property of a customer is destroyed by fire because of an inadequate supply of water no recovery can be had, the theory being that the negligence is in connection with the fire department, and that in maintaining a fire department the municipality is discharging a governmental function. But with this exception, where the water system of a municipal corporation is conducted by the municipality in part for profit, even if principally used for public purposes, the municipality acts in its corporate or private capacity and is liable for damages caused by its negligent construction or management, to its employees or the public generally, to the same extent as a private individual or corporation would be under like circumstances. But, there is a distinction between furnishing water to individuals for compensation and furnishing it for fire purposes. The former is the exercise of a private, and the latter a governmental, function; and there is no liability if the negligent act was done in the extinguishment of fire, or in connection with flushing hydrants solely to better fire protection, or the like.

"On the other hand, a municipality which supplies water to its citizens, and charges therefor, is liable for negligence although its waterworks system is also used for the extinguishment of fires."

To the same effeect, see 4 Dillon, Mun. Corps. (5th Ed.) § 1670, p. 2909.

Defendant does not challenge the general rule of law, but contends that in no event should the city in this action be held liable for negligence in the construction or management of its system of waterworks, because under the provisions of article 11, section 6, of our Constitution, a municipal corporation is prohibited from selling or leasing its system of waterworks. We do not conceive of any good reason why the city should be relieved from

liability on account of its negligence in operating its own water system merely because it may not lease or sell the same. Many public service corporations are required to continue serving the public who are not relieved from exercising due care in such service. This court has heretofore held against the contention made on behalf of the defendant city. *Brown* v. *Salt Lake City*, 33 Utah 222, 93 P. 570, 14 L. R. A. (N. S.) 619, 126 Am. St. Rep. 828, 14 Ann. Cas. 1004; *Lund* v. *Salt Lake County*, 58 Utah 546, 200 P. 510. The exact point here raised by defendant city does not seem to have been discussed in any prior decision, but doubtless this court was not unmindful of the provisions of our state Constitution when it reached its conclusions in *Brown* v. *Salt Lake City*, supra.

We are also of the opinion that the defendant must fail in its contention that the evidence is insufficient to support the verdict. There is a sharp conflict in the evidence. Plaintiff's evidence tends to establish these facts: When the pipe line was constructed a trench was dug into the side of the mountain. The material excavated in digging the trench was thrown below the trench and formed a bank which tended to hold the water coming from the mountain above the trench. In 1921 a slide occurred immediately west of the slides of 1925. In 1922 the pipe line where the slides occurred in 1925 was repaired under the direction of Ogden City. Before and at the time these repairs were made, large quantities of water were leaking from the pipe line. The pipe was decayed to such an extent that the workmen engaged in the repair work poked their fingers through some of the staves. In making the repairs square pieces of galvanized tin were fastened over the places where the pipe was leaking. At the time the repair work was done in 1922, some of the leaks in the pipe line above plaintiff's property were not stopped. The pipe line thus repaired was not further repaired and was still a part of the pipe line when taken out by the slide of April 30, 1925.

For a number of years immediately preceding the slides of 1925, water came from the mountain side near the road directly below the pipe that was taken out by the slide of April 30, 1925. At about the time of the slides of April, 1925, the mountain side above the pipe line was comparatively dry, while the mountain side below the pipe line was saturated with water. The slides of April, 1925, were caused by the mountain side becoming saturated with water. A number of pieces of wooden stave pipe were received in evidence which were claimed to have been picked up from among the debris which came down with the slides of April, 1925. Some of these pieces of pipe were badly decayed. The slide of April 29th removed some of the earth from below the pipe so that a part of the pipe was exposed and could be seen from the bottom of the canyon. Some of the plaintiff's witnesses testified that water could be seen spouting from the pipe as soon as the dirt was removed from below the pipe. Plaintiff testified that she informed the officers of Ogden City that the pipe line was endangering her property, but she did not definitely fix the date of such notice.

Defendant offered evidence tending to show that the pipe line was in good repair; that it was not leaking; and that the slides complained of by the plaintiff were caused by water coming from above the pipe line, from springs, and from rain and snow.

It may readily be conceded that the jury could well have found from the evidence that the slides of April, 1925, were brought about by natural causes; but there is substantial evidence to support the finding of the jury that the slides were caused by the negligence of the defendant in its manner of constructing the pipe line and its failure to keep the same in repair. In such case, it is not the province of this court to pass upon the weight of the evidence.

A number of appellant's assignments of error are based upon the court's instructions to the jury. After stating to

the jury the issues raised by the pleadings, the court, among others, gave the following instructions:

3. "It is not controverted in the evidence in this action that the property of the plaintiff was, by the landslides of the 29th and 30th of April, 1925, injured by the rock, dirt, soil, and water brought down by said landslides and against said property, and by the overflow of the river produced by said landslides injured in the manner and to the extent set forth in paragraphs (c) and (d) above.

"It was the duty of the defendant to use ordinary care in constructing and maintaining its pipe line along the sides of the mountain where these slides occurred, and to keep the same in repair, and there is no presumption that the defendant did perform such duty in the construction, maintenance, and keeping in repair of said pipe line at said place; and its denial of the allegations of negligence set forth in the complaint and in the foregoing instructions casts upon the plaintiff the burden to establish, by a preponderance of the evidence, some one or more of the acts of negligence charged, and that such one or more acts of negligence on the part of the defendant was or were the proximate or an actual contributing cause of the slides and the injuries complained of, before she can recover in this action. And the fact that the slides occurred, as set forth in the complaint and in the foregoing instructions, and admitted by the defendant, and the fact that the property of the plaintiff was injured and some of it destroyed, are not any evidence that the defendant was negligent in any of the particulars set forth in the complaint and in the foregoing instructions."

5. "Before you can find that the defendant was negligent in the construction or maintenance of its said pipe line, or negligent in keeping the same in repair, you must find from a preponderance of the evidence either:

"First, that in laying its pipe it did so in a trench that was left in such condition that it would collect and hold the waters and sediments coming down the mountain, or

"Second, that it used in constructing said pipe line old and defective pipe that would permit the leakage and escape of water therefrom, or

"Third, that it permitted said pipe, if constructed of good material, to become defective and leaky, so as to permit the leakage and escape of water therefrom."

6. "You are instructed that even if you should find, from a preponderance of the evidence, that the defendant was negligent in all or some one of the particulars stated in the last instruction, still it would not be responsible for the injuries to plaintiff's property unless you also find, from a preponderance of the evidence, either:

"First, that the waters flowing down the side of the mountain from above the pipe line accumulated in the trench and sank into the ground, saturating the earth and material underlying the pipe line, and permeated it to such an extent that caused it to slip and slide from under the pipe line and on down the mountain to and against and upon the property of the plaintiff, or

"Second, that the pipe, by reason of its defectiveness and want of repair, permitted leakage of the water from the pipe line to such an extent it permeated the soil and other material underneath and below the pipe line to such an extent as to cause it to slip and slide down the mountain side to and against the property of the plaintiff."

7. "The defendant would not be liable to the plaintiff for the injuries her property sustained, if the landslides were produced and occasioned by natural conditions or natural causes existing at the time and place where the slides occurred, and if it appears to you, after due deliberation of all of the evidence, that it is as probable that the slides occurred from natural causes and conditions as that they were caused by negligence, if any, of defendant, then you should return a verdict in favor of the defendant."

8. "If, however, you find from a preponderance of the evidence that the slides were produced, or occasioned, by the natural conditions existing at the point where the slides occurred, assisted by some negligence of the defendant, then the defendant would be liable."

9. "If you find, from a preponderance of the evidence, that the slide of April 29th was caused by leakage from the pipe line of the defendant, or by the collection of the waters in the trench in which the pipe was laid, and that such slide removed the support of the earth and material lying above the pipe line so that it resulted in the slipping and sliding of the earth and other material down to and over the pipe line, breaking the same, or if you find from a preponderance of the evidence that the said slide of April 29th was occasioned by the natural conditions existing at the place, assisted by some negligence of the defendant, then I charge you that the defendant would be liable for any loss, injury, or damage that the plaintiff sustained by the slide of the 30th; but if you find that the slide of

April 30th was occasioned by the natural conditions existing in the mountains and at the place of the slide, at and above said pipe line, the defendant would not be liable for the loss of or injury to the plaintiff, even though you find that the said last slide broke the pipe of the defendant and caused the water to escape therefrom."

10. "If you find from a preponderance of the evidence the issues upon the question of negligence in favor of the plaintiff and against the defendant, then you must find what would be the reasonable cost of replacing the property of the plaintiff in the same condition it was prior to the slide, and allow her such sum, so found, as damages, and in addition thereto the value of the personal property that was destroyed—not to exceed, in all, the sum of $7,500."

The instructions also contained definitions of "ordinary care," of "negligence," and of "proximate cause." No complaint is made of these definitions.

It is urged by the appellant that the plaintiff has, in her complaint, commingled two separate and distinct causes of action. The complaint alleges, in substance, that the slide of April 29th was caused by the negligence of the city in two respects: (1) The manner of constructing the ■ trench in which the pipe line was laid; and (2) the failure of the city to keep the pipe line in repair. As to the slide of April 30th the city is charged by plaintiff's complaint with negligence in three particulars: (1) The manner of constructing the trench in which the pipe line was laid. (2) The failure of the city to keep the pipe line in repair. (3) The failure of the city to turn the water out of the pipe line after the first slide occurred. Appellant's contention is thus stated in its brief:

"There were two landslides occurring on different days, each of which is alleged to have damaged the property of the respondent; but the amount of damage done by either is not stated in the complaint. The right to recover damages on account of the first slide depends entirely on whether the proof sustains the allegations as to the leaking of the pipe line prior thereto on account of defects therein, or the allegation that there was a trench which caught snow and sur-

face water from above the pipe line or both, and that one or both of these alleged acts of negligence caused the first slide. But as to the second slide, an additional ground of negligence is alleged, viz., the failure to shut the water out of the pipe line after the first slide."

It will be observed that one of the alleged acts of negligence relied upon by plaintiff as to both the slide of April 29th and that of April 30th is that the defendant city conveyed water through its pipe line when the same was not in proper repair. It is a rather refined distinction to say that the failure to turn water out of a defective pipe line is a distinct act of negligence from that of coursing water through a defective pipe line. If the water had been turned out of the pipe line, the city could not have been guilty of negligence in coursing water through a defective pipe line; and if the city coursed water through a defective pipe line, it might well be said that it was negligent in failing to turn the water out of such pipe line. The negligent acts charged as having caused each of the two slides are substantially the same expressed in different language. There is no dispute but that the city was in complete control of the pipe line at all times and was at liberty to either turn the water into or out of the pipe line. It is not difficult to conceive a state of facts where a defendant might well be liable for the damages caused by one slide, but not liable for the damages caused by another slide, where the slides occur as near together in time and location as occurred in this case. Here, however, the plaintiff claims the same acts of negligence caused both slides. Plaintiff's evidence tended to establish the negligent acts charged, and none other than those charged. The city did nothing to relieve itself of the charged negligence during the period of about 24 hours which elapsed between the two slides. The jury were instructed (instruction No. 2) that the burden was on the plaintiff "to establish, by a preponderance of the evidence, some one or more of the acts of negligence charged, and that such one or more acts of negligence on the part of the

defendant was or were the proximate or an actual contribut-ing cause of the slides and the injuries complained of before she can recover in this action." It thus appears that unless the jury found, either that the manner in which the pipe line was constructed, or the condition of the pipe line when so constructed and water was coursed through it by the city, was negligence which proximately caused or contributed to cause the slides, plaintiff was not entitled to prevail. If both slides were caused by the same negligent acts on the part of the city, plaintiff had but one cause of action. We find no error in thus instructing the jury under the issues and evidence in this case.

Appellant earnestly urges that the trial court erred in giving instruction No. 8. Standing alone, we are of the opinion that this instruction is open to the objections urged by appellant. It is pointed out that this in-struction does not confine the jury to a consideration of the negligence charged in plaintiff's complaint. Instruc-tions No. 3, No. 5, and No. 6, however, do confine the jury to a consideration of the negligence charged in the complaint.

It is further urged that instruction No. 8 is erroneous because it is not the law that, if the negligence of the city merely assisted natural causes in producing the injury to plaintiff's property, the city would be liable. The lia-bility of a city in such case depends upon the nature and extent of the assistance rendered by the negligent acts of the city in producing the injury. If the charged negligence of the city combined with the natural causes to produce the slides, and if the charged negligence of the city proximately contributed to the damage complained of, the city is liable for the injury caused by its own negligent acts concurring with such natural cause, provided the injury would not have been sustained by the plaintiff except for the charged negligence of the city. *Mulrone* v. *Marshall*, 35 Mont. 238, 88 P. 797; 1 Thompson, Comms. Law of Neg. § 73, p. 74; 22 R. C. L. § 24, p. 140; 29 Cyc. 496 (G).

The evidence in this case is all to the effect that the sole cause of the two slides here involved was the presence of water on the mountain side where the slides occurred, unless it should be said that the attraction of gravity was also a cause of such slides. That some of the water in the soil on the mountain side came there through rain and snow is self-evident. Under the law as announced by Thompson, R. C. L., and Cyc., supra, the plaintiff, to recover, must establish by a preponderance of the evidence these facts: (1) That the city was negligent as charged in plaintiff's complaint; (2) that as a direct proximate result of such negligence of the city the mountain side where the slides occurred was rendered wetter and more prone to slip and slide; (3) that the slides would not have occurred except for the additional water put upon and into the mountain side by the charged negligence of the city. A question to be determined upon this phase of the case is whether or not the instructions of the court to the jury cast upon the plaintiff the burden of establishing these facts is a prerequisite to her right to recover. Instruction No. 3 informs the jury that the burden is on the plaintiff to establish the negligence of the city. Instruction No. 5 informs the jury of the particular negligent acts that must be established. Instruction No. 6 informs the jury that the burden was on the plaintiff to establish the fact that the negligent acts of the defendant caused the earth to become saturated with water to such an extent that the slides came down the mountain side to and upon plaintiff's property. Instruction No. 7 informs the jury, in effect, that the plaintiff must establish the fact that the slides would not have occurred except for the charged negligent acts of the city. Instructions No. 7 and 8 are logically and textually but one instruction, and, by so regarding and considering them with the other instructions given, we are of the opinion that the jury was informed as to the law applicable to the issues and evidence in this case.

Complaint is also made of instruction No. 10, in that it does not state the correct measure of damages, and also

in that the instruction permitted the jury to award plaintiff damages in a sum as great as $7,500, which sum is far in excess of the damages shown by the evidence. Appellant contends that the measure of damages in this case is the differnce between the market value of the property immediately before and immediately after the injury. It may be conceded that such is the proper measure of damages. It has been held by this court that the measure of damages for the destruction of a house is the "cost to reproduce it, and the value of its use while that was being done." *Marks* v. *Culmer et al.*, 6 Utah 419, 24 P. 528. Appellant concedes the rule as laid down in *Marks* v. *Culmer* as applying to a new house, but contends that when the house is old a reasonable deduction should be made for depreciation. In support of this contention appellant cites the following cases: *Wall* v. *Platt*, 168 Mass. 398, 48 N. E. 270; *Hearn* v. *McDonald*, 69 W. Va. 435, 71 S. E. 568; *Standard Oil Co.* v. *Southern Pac. Co.*, 268 U. S. 146, 45 S. Ct. 465, 69 L. Ed. 890; Sutherland on Damages, 2967; *Chicago & E. Railroad Co.* v. *Ohio Lumber Co.* (C. C. A.) 214 F. 751; *Close* v. *Ann Arbor R. Co.*, 169 Mich. 392, 135 N. W. 346; *Mathews* v. *Missouri Pac. Ry. Co.*, 142 Mo. 645, 44 S. W. 802. We agree with counsel for appellant that upon both authority and reason the plaintiff has no right to be placed in a better position than she would have been in if her property had not been damaged, and that where an old building is destroyed by the negligence of another the owner of such destroyed building should not recover a judgment for a sufficient sum to pay for the erection of a better building than that destroyed. But instruction No. 10 permits the jury to award plaintiff only such damages as "would be the reasonable cost of replacing the property of the plaintiff in the same condition as it was prior to the slide." Nor do we find any just ground for complaint because under instruction No. 10 the jury might have found a verdict for the plaintiff in excess of that justified by the evidence. The sum of $7,500 is the amount prayed for by the plaintiff. The jury

found for the plaintiff in the sum of $2,750. Appellant does not contend that such amount is excessive, and the evidence amply supports the same.

Defendant requested the court to instruct the jury that no evidence was introduced to show or tending to show that there was a trench in which snow or surface water was collected at the place where the slides occurred, and therefore the jury should not consider this claim of the plaintiff. The requested instruction was refused, and the refusal of the court to give the same is assigned as error. The plaintiff alleges in her complaint that the pipe line was laid in a trench and that the trench along which the pipe line was laid would catch the snow and surface water from the hillside above, causing the same to seep into and soften up the dirt and earth lying below the trench. Defendant's answer admits that the pipe line "was built in an artificial trench along the mountain side." The plaintiff and two of her witnesses, as well as one of the defendant's witnesses, testified that there was a bank on the north side or immediately below the pipe line. It is plaintiff's contention that the city was negligent in so constructing the pipe line, and that the trench and banks on the lower side tended to retard the water from draining away from the pipe line. We are of the opinion that the trial court properly submitted to the jury for its determination the question of whether or not the city was negligent in the manner in which it constructed its pipe line.

Complaint is also made that the trial court failed and refused to instruct the jury that the burden was on the plaintiff to prove that the defendant knew that the pipe line was decayed and defective, or that these facts "had existed for such a length of time that by the exercise of ordinary care that defendant would have known of them." The evidence of the defendant is all to the effect that the officers and employees in the water department of the city knew of the condition of the pipe line,

whatever that condition may have been. Thus the superintendent of the waterworks system of defendant city testified that he had been familiar with the conditions prevailing at the pipe line where the slides of 1925 occurred ever since 1915. The plaintiff testified that she informed the officers of the city that the pipe line was out of repair, and nowhere is her evidence in this respect controverted. Apparently this action was not defended on the theory that the officers and employees of the city did not know the condition of the pipe line at the time of and prior to the injury complained of, but upon the theory that they did know and that such condition was not as claimed by the plaintiff. The city having affirmatively shown that it at all times knew of the condition of the pipe line where the slides of 1925 occurred, it may not now be heard to say that the court should have instructed the jury to determine whether or not it did know of such condition.

John G. Ellis, a contractor and builder, testified for the defendant as to the cost of replacing and repairing the buildings of the plaintiff which were destroyed and injured by the slides. He gave his estimate of such cost, and said that in making his estimate he took into consideration the use of some of the unbroken materials that were in the buildings of the plaintiff that were injured or destroyed by the slides. He also testified that the timbers that were not broken would be just as good as new; in fact, better, because they would not shrink. He was then asked if he knew what would be the depreciation in value of buildings such as these of the plaintiff from year to year. The question was objected to as being incompetent, irrelevant, and immaterial. The objection was sustained, and defendant excepted to the ruling of the court. This ruling is assigned as error. It is not made to appear just what amount of new material or what amount of old material the witness proposed to use, according to his estimate, in the reconstruction of the buildings which were damaged and destroyed by the slides. Nor is it made to appear that the buildings proposed to be con-

structed by the witness partly from old material and partly from new material would be any better than were the buildings which were injured and destroyed. If a proper foundation had been laid, we are of the opinion that the answer sought to be elicited by the question was a proper matter of inquiry. But in view of the state of the record at the time the question was propounded, we are of the opinion that no prejudicial error was committed by sustaining the objection.

Appellant has assigned other errors which we have considered and find to be without merit.

We find no prejudicial error. The judgment is affirmed. Respondent is awarded costs.

THURMAN, C. J. and CHERRY, STRAUP, and GIDEON, JJ., concur.