George RUPP et al., Plaintiffs
and Appellants,

v.

GRANTSVILLE CITY et al., Defendants
and Respondents.

No. 16270.

Supreme Court of Utah.

March 27, 1980.

Phil L. Hansen of Hansen & Hansen, Salt Lake City, for plaintiffs and appellants.

Edward A. Watson, Tooele County Atty., Tooele, H. Wayne Green, Deputy Tooele County Atty., Grantsville, for defendants and respondents.

MAUGHAN, Justice:

The plaintiffs bring this appeal from the District Court's dismissal of their suit for declaratory and injunctive relief. Plaintiffs sought a declaration from the District Court that certain ordinances passed by the Grantsville City Commission were unconstitutional, and in excess of their statutory authority. They also requested injunctive relief from the mandatory aspects of the ordinance in question. We uphold the District Court's dismissal. All statutory references are to Utah Code Annotated, 1953, as amended. No costs awarded.

Following a determination by the elected officials of Grantsville City that a municipal sewer system was necessary for the continued health and prosperity of the residents of the city, an ordinance was adopted in 1969. It required mandatory connection with the completed system. This ordinance was enacted to facilitate the procurement of certain federal funds, to defray the cost of construction. In fact, mandatory hook-up to the new system was a condition precedent to the receipt of the federal grants.

After the federal grants were obtained, the citizens of Grantsville approved, through a special election, the issuance of municipal bonds to cover the initial construction and maintenance expenses of the proposed system. Prior to the bond election, the city officials circulated a leaflet to the citizenry which outlined the approximate costs of the new system, and reflected the proposed application of various monies collected. Among the amounts detailed in the flyer was an initial $250 charge for each residence connected to the system. That sum was to be used to reduce the total amount financed by bonds.

Subsequently, bids on the various aspects of the construction were submitted, contracts were awarded, and the construction of the facility commenced. During the construction, the city officials discovered the consulting engineers who designed the system had mistakenly excluded 18,000 linear feet of necessary sewer laterals. To alleviate the financial problems created by this mistake the city officials determined the original connection fee should be increased from $250 to $300. However, before implementing this adjustment, the officials sent letters to the residents of Grantsville advising them of the mistake. The officials also advertised, and held a public meeting concerning the problem. The meeting was well attended. Following open discussion on the matter a vote was taken which endorsed the proposed solution.

The plaintiffs in the present matter are a number of named residents of Grantsville who refused to pay the connection fee. Following several letters notifying the plaintiffs of their failure to pay the fee and the consequences of continuing non-compliance the city officials discontinued water service to the plaintiffs' residences pursuant to a city ordinance allowing such actions for the enforcement of the mandatory sewer connection ordinance.

After reinstatement of their water services,[1] the plaintiffs filed suit in the District Court seeking declaratory and injunctive relief from the enforcement of the mandatory hook-up ordinance, and the assessment of the associated fee. After a hearing on the merits, the District Court dismissed the plaintiffs' suit.

On appeal the plaintiffs present various nonmeritorious claims which will not be discussed. Rather, we direct our attention to the plaintiffs' contentions; (a) the municipality acted beyond its authority in enacting the ordinance mandating connection to the new sewage system, and (b) the termination of plaintiffs' water service because of their failure to pay the initial connection fee constituted an unconstitutional deprivation of property without due process of law.

 In Utah, municipalities are granted broad powers for the protection of the

1. Upon payment of the mandatory fee the plaintiffs' water services were reinstated.

health and welfare of their residents. Among these powers is the statutory authority to establish and maintain public utilities for the benefit of those residents.[2] Inherent in the power to preserve and protect the health and welfare of municipal residents is the authority to adopt ordinances directed at the effectuation of that protection. This general grant of police power is codified in 10-8-84 which provides:

"They [municipalities] may pass all ordinances and rules and make all regulations, not repugnant to law, necessary for carrying into effect or discharging all powers and duties conferred by this chapter, and such as are necessary and proper to provide for the safety and preserve the health and promote the prosperity . . comfort and convenience of the city and inhabitants thereof, and for the protection of property therein; . . ."

The scope of police power conferred on municipal governments by the requirements incident to effective protection of the health and welfare of their citizenry are reflected in statutes such as 10-8-84. The relationship between a mandatory connection ordinance and this police power was recognized in *Bigler v. Greenwood*.[3] In *Bigler*, this Court in upholding the mandatory connection ordinance explained:

"Such an ordinance is undeniably proposed to protect the health and welfare and is therefor a valid exercise of authority expressly conferred under the police power."

 There is nothing in the present situation which requires a retreat from that position.[4] The Grantsville ordinance in question is a valid exercise of the municipalities recognized police power and therefore is enforceable against the plaintiffs.

The plaintiffs aver, however, the city's enforcement procedure represents an unconstitutional deprivation of property without due process of law. Concomitant to the mandatory connection ordinance was an ordinance providing for the discontinuation of domestic water service to the residents which failed to pay the initial connection fee or the monthly use fees.

The plaintiffs complain termination of their water service without a hearing deprived them of property without the requisite due process of law. We do not agree with this conclusion.

 Several questions arise from this contention including the characterization of municipal water services as an entitlement constituting property under the purview of due process protection[5] of the Constitution of Utah, Article I, Section 7, and the application of the Fourteenth Amendment to

2. 10-8-15 proclaims: "They (municipal governments) may construct or authorize the construction of waterworks within or without the city limits, and for the purpose of maintaining and protecting the same from injury and the water from pollution their jurisdiction shall extend over the territory occupied by such works, and over all reservoirs, streams, canals, ditches, pipes and drains used in and necessary for the construction, maintenance and operation of the same, and over the stream or source from which the water is taken, , . . They may enact all ordinances and regulations necessary to carry the power herein conferred into effect, . . . ."

3. See *Bigler v. Greenwood*, 123 Utah 60, 254 P.2d 843 (1953).

4. The fact the legislature amended 10-8-38 to include a specific express grant of power to enact mandatory ordinances is merely an express recognition of power implied in the police powers previously held by the municipalities,

and is not, as the plaintiffs contend, a legislative grant of a new power not previously held by the cities.

5. The plaintiffs rely heavily on *Koger v. Guarino*, 412 F.Supp. 1375 (D.C.Pa.1976). In *Koger* the plaintiffs brought a Section 1983 action alleging the municipalities termination of water services for failure to pay past charges without notice and hearing constituted a denial of due process. The court reasoned a water user has a legitimate claim of entitlement continued water service which is a property interest protected by the due process clause of the Fourteenth Amendment. Other district courts have reached similar conclusions. See *Bradford v. Edelstein*, 467 F.Supp. 1361, 1376, 1377 (D.C. Tex.1979); However, this conclusion was seriously questioned by the first appellate court to consider it. See *Sterling v. Village of Maywood*, 579 F.2d 1350, 1354-1355 (7th Cir. 1978).

municipalities engaged in the operation of such public utilities.[6] However, in the present case the resolution of these issues is not required because the procedure available to the plaintiffs in relation to the discontinuation of their water services was sufficient to provide due process of law.

Specifically, prior to termination, the plaintiffs received several letters notifying them of the consequences of their continuing failure to comply with the terms of the ordinance in question. Thus, they were afforded adequate notice of the imminent action. The plaintiffs complain, however, that the failure of the municipality to grant them a pretermination hearing abridged their due process right.

■ However, "due process" is not a technical concept with a fixed content unrelated to time, place and circumstances which can be imprisoned within the treacherous limits of any formula.[7] Rather the demands of due process rest on the concept of basic fairness of procedure and demand a procedure appropriate to the case and just to the parties involved.[8]

■ The protections embodied in the requirement of an opportunity to be heard do not necessarily require a pretermination hearing. In the present situation there is no question of fact requiring resolution at a hearing prior to termination of the water service. The amount due and owing is established and the only question involved is the legality of the ordinance.[9] The appropriate forum for a determination of the authority of the municipality to enact and enforce the ordinance in question is the courts of this State. Also in the present situation, access to formal judicial proceedings is facilitated by 59–11–11[10] which allows the plaintiff to tender the payments required under protest and secure the continuation of water services while insuring a

---

**6.** Courts have generally recognized the proprietary character of the municipalities operation of a public utility such as a water or sewer system. See *Egelhoff v. Ogden City*, 71 Utah 511, 267 P. 1011 (1928); *Hunke v. Foote*, 84 Idaho 391, 373 P.2d 322 (1962); *Schmidt v. Kimberly*, 74 Idaho 48, 256 P.2d 515 (1953); *Sharp v. Hall*, 198 Okl. 678, 181 P.2d 972 (1947); However, while the operation of the utility is a proprietary activity the power to compel connection with the sewer system is a governmental exercise of the State police power. As the Idaho Supreme Court explained in *Schmidt*, supra: "There is no inconsistency between the holding herein that in the operation of a public utility the village exercises a proprietary function, and the holding that in requiring connections to be made with the sewage system the village is exercising its police power, which is a governmental function." at 524. Cf. *Egelhoff v. Ogden City*, supra at 1012; *Brummit v. Ogden Waterworks Co.*, 33 Utah 289, 93 P. 828 (1908); *Hunke v. Foote*, supra, at 325, ("In its governmental capacity, it may command; in its private character as a collection of individuals, it must sometimes barter and bargain."); In the present situation the municipality is involved in both aspects of this dichotomy. Thus, while fulfilling a proprietary role in operating the waterworks the municipality is also employing its governmental powers to mandate connection with the new sewer system. See generally *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); But cf. *Lafayette v. Louisi-

ana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978).

**7.** See *Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

**8.** See the *Japanese Immigrant case*, 189 U.S. 86, 47 L.Ed. 721, 23 S.Ct. 611 (1903).

**9.** This is not a situation where a bona fide dispute exists concerning the amount due or the liability of the plaintiff for payment. But see *Dodd v. City of Atlanta*, 154 Ga. 33, 113 S.E. 166 (1922).

**10.** 59–11–11 provides:
"Payment under protest—Action to recover. —In all cases of levy of taxes, licenses, or other demands for public revenue which is deemed unlawful by the party whose property is thus taxed, or from whom such tax or license is demanded or enforced, such party may pay under protest such tax or license, or any part thereof deemed unlawful, to the officers designated and authorized by law to collect the same; and thereupon the party so paying or his legal representative may bring an action in the tax division of the appropriate district court against the officer to whom said tax or license was paid, or against the state, county, municipality or other taxing unit on whose behalf the same was collected, to recover said tax or license or any portion thereof paid under protest."

subsequent judicial proceeding in the matter.[11]

The discontinuation of the plaintiffs' water service upon their failure to pay the authorized connection fee after notice and an opportunity to reinstate the service in question by a conditional tender of monies owed prior to a formal judicial proceeding was not arbitrary, capricious, or unjust. Rather, the procedures available to the plaintiffs insured notice of the claim and consequences of nonpayment and a meaningful opportunity to be heard in an appropriate forum. Therefore the demands of due process were fulfilled in this case.[12]

After thorough consideration of the plaintiffs' other points on appeal we conclude they are without merit.

CROCKETT, C. J., and HALL, WILKINS and STEWART, JJ., concur.

---

11. The plaintiffs failure to employ this protection does not diminish its procedural fairness. The fact the municipality accepted various payment schemes in relation to the mandatory fee also supplements the protections embodied in 59–11–11 by alleviating any economic hardship incident to the initial payment.

12. See *Davidson v. New Orleans*, 96 U.S. 97, 24 L.Ed. 616 (1877); In *Davidson* the United States Supreme Court explained: ". . . That whenever by the laws of a State, or by State authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, whether it be for the whole State or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however *obnoxious it may be to other objections.*" at 104–105.