Minnie H. THOMAS, Plaintiff and Appellant,

v.

CLEARFIELD CITY, a municipal corporation, Defendant and Respondent.

No. 17338.

Supreme Court of Utah.

Feb. 24, 1982.

Ronald W. Perkins, Ogden, for plaintiff and appellant.

Alfred C. VanWagenen, Clearfield, for defendant and respondent.

OAKS, Justice:

In May, 1978, a blockage in the sewer line along 200 South in Clearfield City caused sewer water to back up into the basement of Minnie H. Thomas, a long-time resident of Clearfield. The City cleaned out their line and assured her that her damages would be paid. When this was not done, she gave the required statutory notice and then brought suit against Clearfield City for $2,500 in damages to her basement and its contents. Plaintiff alleged that the damage was sustained "as a result of flooding and water backing up into her premises" as a direct and proximate result of defendant City's negligence "in not properly maintaining the sewer system along 200 South" in Clearfield. The City moved for summary judgment on the basis that it was "protected by governmental immunity against any cause of action alleged in plaintiff's complaint." The district court granted that motion and dismissed the complaint with prejudice. Plaintiff took this appeal.

The question in this appeal is whether the City has immunity for the injuries inflicted in this case. This question turns on the interpretation we give to the Utah Governmental Immunity Act, U.C.A., 1953, § 63–30–1, *et seq.*, and a sequence of Court decisions on governmental immunity.

In *Cobia v. Roy City*, 12 Utah 2d 375, 366 P.2d 986 (1961), this Court held that a city was immune from damages inflicted by the stoppage of a sewer because the operation of a sewer system was a governmental function qualifying for governmental immunity. The new Utah Governmental Immunity Act became effective in 1966. With this Act, the Legislature obviously intended to enlarge the liability of governmental entities and, as one eminent commentator observed, to induce the courts "to produce sounder, more imaginative, and more rationally principled decisions in this field [of governmental immunity] than in the past." Van Alstyne, "Governmental Tort Liability: A Decade of Change," 1966 *U.Ill.L.Forum* 919, 970. The effect of that legislation has now been explained in two decisions of this Court: *Standiford v. Salt Lake City Corp.*, Utah, 605 P.2d 1230 (1980) and *Johnson v. Salt Lake City Corp.*, Utah, 629 P.2d 432 (1981).

As we noted in *Standiford*, the Legislature designed the new Governmental Im-

munity Act "to allow the courts flexibility and adaptability in fashioning consistent and rational limits to governmental immunity." 605 P.2d at 1232. Under this legislation, the doctrine of governmental immunity was confined to the general limits enacted in § 63–30–3. As we explained in *Johnson* :

> For present purposes, this means that "all government entities are immune from suit for any injury which results from the exercise of a governmental function," U.C.A., 1953, § 63–30–3, but such entities are not immune from suit for an injury which does not result "from the exercise of a governmental function."

629 P.2d at 433. The definition of "governmental function" is therefore critical in determining the general extent of governmental immunity. The definition this Court established in the *Standiford* case, and reaffirmed in the *Johnson* decision, is as follows:

> We therefore hold that the test for determining governmental immunity is whether the activity under consideration is of such a unique nature that it can only be performed by a governmental agency or that it is essential to the core of governmental activity.

*Standiford*, 605 P.2d at 1236–37. The test was explained in *Johnson* as follows:

> The first part of the *Standiford* test— activity of such a unique nature that it can only be performed by a governmental agency—does not refer to what government *may* do, but to what government alone *must* do. The provision of recreational opportunities [involved in both *Standiford* and *Johnson*] is not in that category. Nor does recreation fit within the second part of the *Standiford* test— "essential to the core of governmental activity"—, which refers to those activities not unique in themselves (and thus not qualifying under the first part) but essential to the performance of those activities that are uniquely governmental.

629 P.2d at 434.

It is generally conceded that the doctrine of governmental immunity, which origi-

nated in the personal privilege of the English Crown, is ill suited to the conditions of this Republic. By judicial decisions and by legislative enactments such as our Governmental Immunity Act and the federal Tort Claims Act, the rule of governmental immunity has been progressively and significantly reduced. The principal difficulty has been that of phrasing a rule of reduced immunity that would be fair and appropriate in theory and workable in practice. As noted in the *Standiford* case, the distinction between government activities that were "proprietary" (in the sense that they competed with private business) and those that were "governmental" (in the sense that they did not so compete) has been practically universally condemned as "inherently unsound." 605 P.2d at 1236. Thus, it was the proprietary/governmental distinction which led this Court into the anomaly noted in *Standiford* and *Johnson* that "a sewer system was an immune governmental function," *Cobia v. Roy City, supra*, "but a water system was not," *Egelhoff v. Ogden City*, 71 Utah 511, 267 P. 1011 (1928). 629 P.2d at 433. Instead of relying on that artificial distinction, courts should, as we noted in *Standiford*, focus on the real concern—"whether a governmental entity, like individuals and private entities, should be liable for an injury inflicted by it." 605 P.2d at 1234.

In *Standiford* and *Johnson*, this Court defined "governmental function" in a way that attempts to avoid the pitfalls encountered in earlier efforts, but still carries out the evident policy of the Legislature to broaden the liability of government entities in a manner defined in the gradual process of interpretive litigation. Those decisions held that governmental immunity was not a defense against actions for injuries sustained in the course of recreational activities, since the provision of recreational opportunities is not "the exercise of a governmental function." In this case, we must decide whether the same is true of damages inflicted by the negligent maintenance of a city sewer system.

The City argues that the maintenance of a sewer is "essential to the core of governmental activity" under the *Standiford* test because the Legislature has given municipalities the power and duty to provide sanitary sewer systems within their respective jurisdictions and the power to enforce mandatory hookups. U.C.A., 1953, § 10–7–14.1, § 10–8–38. These considerations surely establish that the operation of a sanitary sewer system is a governmental function for purposes of the municipality's authority to operate, but it does not follow from this that the function automatically qualifies for governmental immunity as "essential to the core of governmental activity." The whole history of the governmental immunity controversy is replete with circumstances where government has the authority to operate but where its operations do not enjoy governmental immunity.

The City also argues that because municipalities are empowered to take property by eminent domain to construct and operate sewer systems and to compel homeowners to connect to them, the provision of sewer services is an activity "of such a unique nature that it can only be performed by a governmental agency." Even assuming that the collection and disposal of sewage is most effectively, safely, and inexpensively performed by a governmental body, we do not agree that these functions are uniquely governmental or essential to the core of its activity. It is not even mandatory that a governmental entity perform these functions. In many rural and recreational areas of our state, individual homeowners or small clusters of homes legally provide their own sewer services with septic tanks. Larger developments having common ownership, such as condominiums or trailer courts, currently can and do provide their own collection and disposal of sewage, subject to government standards for pollution control and public health. Even the right of eminent domain is granted by statute to the "corporation, association, commission or person in charge of the public use," U.C.A.,

1953, § 78–34–6(1), of providing the "sewerage of any city or town, or of any settlement of not less than ten families . . . ." § 78–34–1(9).

We conclude that the collection and disposal of sewage is not "of such a unique nature that it can only be performed by a governmental agency," *Standiford*, 605 P.2d at 1237, in the sense that these are activities that "government alone *must* do." *Johnson*, 629 P.2d at 434. By the same token, these activities are not "essential to the core of governmental activity," 605 P.2d at 1237, because they are not "essential to the performance of those activities that are uniquely governmental." *Johnson*, 629 P.2d at 434. Since it is contrary to the new test enunciated in *Standiford* and *Johnson, Cobia v. Roy City*, 12 Utah 2d 375, 366 P.2d 986 (1961), is overruled.

The judgment of the district court is reversed, and the cause is remanded for proceedings consistent with this opinion, including the availability of defenses other than sovereign immunity. *Johnson*, 629 P.2d at 434.

STEWART and DURHAM, JJ., concur.

HALL, Chief Justice (concurring in the result):

I agree that the doctrine of governmental immunity has no application in this case. I base my conclusion, however, not on the Court's holdings in *Standiford v. Salt Lake City Corp.*[1] and *Johnson v. Salt Lake City Corp.*,[2] but on statutory language which specifically waives immunity in a case such as this.

U.C.A., 1953, 63–30–9 provides as follows:

Immunity from suit of all governmental entities is waived for any injury caused from a dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement. Immunity is not waived for latent defective conditions.

Clearly, the blocked sewer line which allegedly caused plaintiff's damage in the in-

---

1. Utah, 605 P.2d 1230 (1980).

2. Utah, 629 P.2d 432 (1981).

stant case is a public improvement. In *Parrish v. Layton City Corp.,*[3] this Court held that damages incurred from defective conditions of a sewer drain fell under the purview of this section.[4]

The exception to the waiver of immunity is where "latent defective conditions" are involved. In *Vincent v. Salt Lake County,*[5] we held that a latent defect is one which is not discoverable by a reasonable inspection. Whether the blockage which caused plaintiff's damage was discoverable is clearly an issue to be determined in a trial of plaintiff's negligence claim.

I therefore concur that the summary judgment dismissing plaintiff's complaint was improperly granted. I too would reverse and remand for further proceedings.

HOWE, J., concurs in the opinion of HALL, C. J.

---

3. Utah, 542 P.2d 1086 (1975).

4. See also, *Sanford v. University of Utah*, 26 Utah 2d 285, 488 P.2d 741 (1971).

