PONDEROSA ONE LIMITED PARTNERSHIP, a Utah limited partnership, Plaintiff and Appellant,

v.

SALT LAKE CITY SUBURBAN SANITARY DISTRICT, Defendant and Respondent.

No. 860448.

Supreme Court of Utah.

June 4, 1987.

---

1. R. Utah S. Ct. 3(a).

**636**

Jerrold Jensen, Salt Lake City, for plaintiff and appellant.

David Wahlquist, Salt Lake City, for defendant and respondent.

PER CURIAM:

Plaintiff Ponderosa One Limited Partnership (Ponderosa) appeals from a summary judgment barring its action as untimely. We reverse and remand for a trial on the merits.

Ponderosa is engaged in the construction business. In December of 1984, it paid to defendant Salt Lake City Suburban Sanitary District (the District), the sewer connection fee on an apartment complex that was then under construction. The District is an improvement district established under Utah Code Ann. § 17-6-1 (1987). In May of 1985, it billed Ponderosa for sewer

services in the amount of $2,800 for the period from May 1, 1985, through August 31, 1985. Ponderosa paid that amount under protest on June 24, as the apartment complex had not been completed and was still unoccupied. Ponderosa's complaint for the recovery of the service charges was filed on March 2, 1986. The District filed its motion for summary judgment, claiming that the action was barred by the six-month statute of limitations contained in Utah Code Ann. § 78-12-31(2) (1977). The judgment was granted.

On appeal, Ponderosa assails the trial court's application of the six-month statute of limitations to its claim as improper. It contends that sewer service charges are not a tax but a charge for services rendered. The District contends that Ponderosa's payment under protest was governed by Utah Code Ann. § 59-11-11 (1986). That section, claims the District, applies not only to taxes, but also to "other demands for public revenue" paid under protest. Consequently, actions to recover "demands for public revenue" paid under protest, according to the District, are barred unless brought within six months in accordance with section 78-12-31(2).

The only issue before this Court is whether the payment of sewer service charges is the payment of a tax which, if paid under protest, must be tested in a judicial proceeding within six months of payment.

Utah Code Ann. § 59-11-11 (1986) reads as follows:

In all cases of levy of taxes, licenses, <u>or other demands for public revenue</u> which is deemed unlawful by the party whose property is thus taxed, or from whom such tax or license is demanded or enforced, such party may pay under protest such tax or license, or any part thereof deemed unlawful, to the officers designated and authorized by law to collect the same; and thereupon the party so paying or his legal representative may bring an action <u>in the tax division of the appropriate district court</u>[1] against the

1. The underlined language was substituted for "any court of competent jurisdiction" by legisla-

officer to whom said tax or license was paid, or against the state, county, municipality or other taxing unit on whose behalf the same was collected, to recover said tax or license or any portion thereof paid under protest.

(Emphasis added.)

Actions against a tax collector to whom money was paid under protest must be brought within six months, as set out in Utah Code Ann. § 78–12–31(2) (1977):

For money paid to any such officer under protest, or seized by such officer in his official capacity, *as a collector of taxes,* and which, it is claimed, ought to be refunded.

(Emphasis added.)

Prefatory to our discussion of the just-cited statutes, we affirm our continued adherence to well-established canons of statutory construction. Under the maxims of *noscitur a sociis* (it is known from its associates) and *ejusdem generis* (of the same class), the phrase "other demands for public revenue" contained in section 59–11–11 is in one class with the words "taxes and licenses" and takes its coloring from them. The former maxim implies that "when two or more words are grouped together, and ordinarily have a similar meaning, but are not equally comprehensive, the general word will be limited and qualified by the special word." Under the latter, "[w]here general words are subjoined to specific words, the general word will not include any object of a class *superior* to that designated by the specific words." *Hansen v. Wilkinson,* 658 P.2d 1216 (Utah 1983) (citing 2A C. Sands, *Sutherland Statutory Construction* § 47.16, *et seq.* (4th ed. 1973) (emphasis in original)). Under the maxim of *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another), the term "collector of taxes" contained in section 78–12–31(2) may not be expanded to include collectors of dues, fees, and service charges in general. *Cf. Anderson v. Board of Review,* 737 P.2d 211 (Utah 1987). Under this last maxim, "[i]t probably is not wholly inaccurate

to suppose that ordinarily when people say one thing they do not mean something else." *Hansen,* at 1217.

With those limitations in mind, we now examine the nature of the sewer service charges Ponderosa paid under protest, in order to determine whether that payment was a tax and therefore subject to section 78–12–31(2). "Sewer charges and fees are not taxes or special assessments, but are in the nature of tolls or rents paid for services furnished or available." 11 E. McQuillin, *Municipal Corporations* § 31.30a (3rd revised edition 1983). *See also Jennings v. Walsh,* 214 Kan. 398, 521 P.2d 311 (1974). In *Home Builders Association of Greater Salt Lake v. Provo City,* 28 Utah 2d 402, 503 P.2d 451 (1972), and *Murray City v. Board of Education,* 16 Utah 2d 115, 396 P.2d 628 (1964), this Court denied the characterization of a sewer charge and a connection charge as a *revenue* measure and stated that such charges are neither taxes nor assessments but payments for services furnished. *Home Builders Association,* 503 P.2d at 452. That characterization is echoed in *City of Stanfield v. Burnett,* 222 Or. 427, 353 P.2d 242 (1960), *overruled on other grounds, Aloha Sanitary Dist. v. Wilkens,* 245 Or. 40, 420 P.2d 74, 77 (1966), where property owners not hooked up to a sewer system had challenged the city's imposition of a fee and where the court found that "a charge for the use of a sewer is not a tax or assessment, but a charge for a service rendered and is based on contract." *Cf. Loup-Miller Construction Co. v. City and County of Denver,* 676 P.2d 1170 (Colo.1984); *Apodaca v. Wilson,* 86 N.M. 516, 525 P.2d 876 (1974); *State v. Bartos,* 102 Ariz. 15, 423 P.2d 713 (1967).

We therefore hold that section 78–12–31(2) was improperly applied by the trial court, as the money Ponderosa paid under protest was not paid to an officer in his official capacity as a tax collector.

Nonetheless, the District argues that an action for the recovery of a sewer fee paid under protest is governed by section 59–11–11, and as that statute governs the pay-

tive amendment in 1977. S. 106, 42d Leg., Reg. Sess., 1977 Utah Laws 80 (Lorraine). That

amendment itself is indicative of the narrow applicability of the statute.

**638**

ment of taxes, licenses, and *other demands for public revenue,* the applicable statute of limitations is section 78–12–31(2). In support, the District cites *Jenkins v. Swan,* 675 P.2d 1145 (Utah 1983); *Rupp v. Grantsville City,* 610 P.2d 338 (Utah 1980); *Peterson v. Bountiful City,* 25 Utah 2d 126, 477 P.2d 153 (1970); and *Neilson v. San Pete County,* 40 Utah 560, 123 P. 334 (1912). *Jenkins, Peterson,* and *Neilson* all involved payments of taxes and were thus properly within the ambit of sections 59–11–11 and 78–12–31(2).

The issue in *Rupp* that concerned the applicability of section 59–11–11 was whether the plaintiffs were denied due process when their water service was terminated without a hearing after they had failed to pay their mandatory sewer connection fee. The only question on appeal there was the legality of the Grantsville ordinance requiring mandatory connection with the completed system. This Court held that the courts of this state were the proper forum to determine the authority of the municipality to exact and enforce the ordinance and that access to formal judicial proceedings was facilitated by section 59–11–11, affording the plaintiffs due process of law. *Rupp* is easily distinguished from the case under review. In *Rupp,* the citizens of Grantsville approved through a special election the issuance of municipal bonds to cover the initial construction and maintenance expenses of a proposed sewer system. The amounts to be collected were to be used to reduce the total amounts financed by the bonds. "District sewers are those draining a limited area and constructed or acquired under proper municipal authority, within the limits of an established sewer district and usually paid for by special taxation or local assessments." *McQuillin,* at § 31.06. Under the circumstances in *Rupp,* therefore, the sewer connection fee was a demand for public revenue and payment under protest was properly facilitated by section 59–11–11.

By comparison here, the District acknowledges that its Board of Trustees adopted by resolution a policy of commencing sewer service charges at the time the connection fees were paid by the recipient

of the service. The purpose, according to the District, was to avoid the unreasonably burdensome task of monitoring when each recipient was actually using the service. The fee therefore was a use charge and not a levy to raise revenues. As such, it is distinguishable from *Rupp* and does not fall under section 59–11–11. Instead, the applicable statute of limitations is section 78–12–25(1), barring actions after four years "on an open account for work, labor, or services rendered...." *Staker v. Huntington Cleveland Irrigation Co.,* 664 P.2d 1188 (Utah 1983).

Reversed.